POSTAL TELEGRAPH-CABLE COMPANY *v.* MAYOR AND COUNCIL OF CORDELE.

Where a city by ordinance laid a tax of $100 on every telegraph company doing business within the city, or in lieu thereof required such companies to pay $2 for each and every pole within the city limits, which tax affected the entire business of such companies, both interstate and domestic, such an ordinance is unconstitutional and void as against a company doing an interstate business.

DECEMBER 11, 1912.

The Court of Appeals certified the following questions:

"An ordinance of the City of Cordele laid a tax of $100 for revenue purposes upon every telegraph company doing business in the City of Cordele, or, in lieu thereof, required each of such companies to pay $2 for each and every pole used in the city limits. The Postal Telegraph-Cable Company, having failed to pay the tax, was adjudged guilty and sentenced to pay the penalty prescribed in another ordinance of the city. Defenses were filed to the effect that the ordinance was unreasonable, and was also void as being an unlawful interference with interstate commerce. The undisputed facts were as follows: 'The Postal Company was and is engaged principally in the transmission of telegraph messages between different points in the several States of the United States, and between those points and foreign countries, and is therefore engaged in doing an interstate-commerce business, as well as an international-commerce business. Some years ago it accepted the act of Congress approved July 24, 1866, and the amendments and supplements thereto, and is operating under the terms of said act and in accordance with its provisions; that by virtue thereof its

poles and wires have been at all times, and are now used for the transmission of telegraphic messages of the United States government and various departments thereof, at prices fixed from time to time by the Postmaster-General of the United States, in accordance with the terms of said act of Congress. The highways upon which its poles and wires are constructed and operated are post-roads and post-routes within the meaning of said act of Congress defining post-roads and post-routes. The poles and wires and telegraph lines belonging to said Postal Company and located within the corporate limits of the City of Cordele are each and all parts of its general telegraph system running into and through every State in the United States and connecting with submarine cables operated from the United States to Europe and other foreign countries, and messages transmitted over said line in and through said City of Cordele are in part telegraphic messages between different States of the United States and between the United States and foreign countries. The Postal Company was and is engaged in the transmission of telegraphic messages from and to the City of Cordele and other points in the State of Georgia, and to the extent of the business so conducted by it between different points in the State of Georgia it is likewise engaged in an intrastate business. There are now engaged in the business of transmitting telegraphic messages to and from the City of Cordele only two telegraphic companies, to wit, the said Postal Company and the Western Union Telegraph Company. Prior to the entrance of said Postal Company into the State of Georgia, and the City of Cordele, about twenty years ago, all of the telegraphic business of every character whatsoever was done and controlled wholly by said Western Union Telegraph Company, or its predecessor, which then, until said Postal Company entered said field, maintained and enjoyed a monopoly of the telegraph business in the State of Georgia and City of Cordele. By reason of certain advantageous arrangements between the Western Union Telegraph Company and the railway companies operating their lines into and from the City of Cordele, and because said Western Union Telegraph Company had a monopoly of said business, it alone had and has the right and privilege to use the rights of way of said railway companies for the erection of its poles and wires used in connection with the transmission of its telegraph messages,

with a few exceptions where such rights of way have since been acquired by the Postal Company by condemnation; and likewise the Western Union Company enjoyed and still enjoys an exclusive privilege to the use of the equipment and other facilities furnished by said railway companies in and about the maintenance and operation of its telegraph lines.   By reason of the superior advantage so enjoyed by said Western Union Company, and by reason of the long term of years during which it enjoyed a monopoly of the business [of] transmitting telegraph messages in the State of Georgia and City of Cordele, the said Western Union Company has in existence and operation a much larger number of telegraph offices in the State of Georgia and in the United States than the Postal Company, there being in operation by said Western Union Company in the State of Georgia about 545 offices of large and small importance, and by the Postal Company 40 offices of large and small importance, which proportion continues as to the entire United States substantially the same as in the State of Georgia.   For this reason, the business done by the Western Union Company in the City of Cordele, both interstate and intrastate, is largely in excess of the business done by the Postal Company.   The total gross receipts of the office of the Postal Company at Cordele during the year 1911 amounted to $1,303.44, of which $825.32 was on account of interstate business, and $478.12 on account of intrastate business.   The total expenses of the office at Cordele during the year 1911 amounted to $1,359.80, of which $860.75 was properly apportioned and chargeable to interstate traffic and $499.05 apportioned and chargeable to intrastate traffic.   The total gross receipts of the Western Union Company at its office in Cordele from February 1, 1911, to February 1, 1912, amounted to $4,299.36.   The total expense of its said office at Cordele for said term amounted in the aggregate to $2,275.32. Its· receipts at said office for said term on account of intrastate traffic amounted to $2,071.45. ' The expenses of said office for said term are properly apportionable to the interstate business and intrastate business, according to their respective amounts.   The figures named as to the receipts and disbursements both by the Postal Company ·and by the Western Union Company do not take into consideration any interest on the investment in said city by either company.   The total interstate business done by the

Postal Company in the State of Georgia during the year 1911 amounted in gross receipts to $231,062.17. The total expenses incurred by it in the operation of said business during said year, properly apportioned to said interstate business, without taking into account any general office expenses or interest on the investment, amounted to $258,255.34. The total intrastate business done by the Postal Company in the State of Georgia, during the year 1911, amounted in gross receipts to $49,028.38. The total expenses incurred by it in the operation of said intrastate business during said year properly apportionable thereto, without taking into consideration any of said general office expenses or interest on the investment, amounted to $53,575.88. The taxable value of all of the properties of the Postal Company located in said State of Georgia, including both its physical property and its franchises, as fixed by the authorities of the State of Georgia for the year 1911, was $231,717, and the portion thereof located within the corporate limits of the City of Cordele, as fixed by said taxing authorities, amounted to $180. The business of the Western Union in the City of Cordele and in the State of Georgia is larger than that of the Postal, because of the former's superior advantages hereinbefore referred to, and because of its larger number of offices in the State of Georgia, and not because of its superior diligence, management, or business methods which, under competition, might have reduced or so affected the Postal business as to render it unprofitable. There are only two telegraph companies engaged in business in Georgia. They are, under the laws of said State, subject to such rules and regulations as may be prescribed for the government of their business by the railroad commission of the State of Georgia, within the limits imposed by law upon said commission, and, among other things, the railroad commission in connection with their supervision and control of the intrastate business of telegraph companies has fixed the tariff or charges for the intrastate messages at twenty-five cents each, and has prohibited telegraph companies from demanding or collecting any charge in excess of such fixed charge. The commission has promulgated a rule or regulation prohibiting telegraph companies from discontinuing any offices opened by it in the State of Georgia, without first obtaining the permission or consent of the commission. Another rule prohibits the increase of charges as to intra-

state business, except with the consent of the commission. Another rule requires telegraph companies operating their offices for interstate business in the City of Cordele to likewise receive and transmit all messages offered to it which are intrastate in character. The levying of said taxes against the Postal Company by said City of Cordele is purely for the purpose of raising revenues for said city. The city is put to no expense of any character whatever in connection with the business done by said company within the corporate limits. It is under no expense for inspecting the wires of said Postal Company. The Postal Company has no poles within the corporate limits of the City of Cordele; its wires are strung upon the poles of other companies which pay the license tax thereon. The Postal Company paid before and during the year 1911, and stands ready at all times hereafter to pay, the valid or legal ad valorem taxes which have been or may be exacted of it both by the State of Georgia and the City of Cordele. The total ad valorem taxes paid by it in the State of Georgia during the year 1911 amounted to $3,539.98, and in the distribution thereof in accordance with the laws of the State of Georgia the amount received therefrom by the City of Cordele was $2.59. In addition to the ad valorem taxes paid by said company during said year, it paid out, by way of occupation taxes to the various towns, cities, and other municipalities in said State, the sum of $2,072.67. The Postal Company is not engaged in transmitting telegrams from any portion of the City of Cordele to another portion of said city, nor is it engaged in receiving telegrams sent from one portion of said city to another portion of said city, but is engaged only in transmitting telegrams from the City of Cordele to points outside of the City of Cordele and receiving telegrams in said city from points outside thereof. The fee to the streets and roads in the City of Cordele is not in the city, but in abutting-property owners.'

"1. Is the case controlled by the principle of the decision of the Supreme Court in *Atlantic Postal Telegraph-Cable Co.* v. *Mayor etc. of Savannah,* 133 *Ga.* 66 [65 S. E. 184], and is the ordinance unreasonable and void under the principle of that decision, or do the facts bring the case within the principle of the decision in *Atlantic Postal Telegraph-Cable Co.* v. *Mayor etc. of Savannah,* 136 *Ga.* 657 [71 S. E. 1115]?

"2. Is the ordinance in question void as being an unlawful interference with interstate commerce?"

*J. T. Hill* and *Anderson, Felder, Rountree & Wilson,* for plaintiff in error. *E. F. Strozier,* contra.

HILL, J. The answer to the last question propounded by the Court of Appeals controls this case, namely: "Is the ordinance in question void as being an unlawful interference with interstate commerce?" If the ordinance is void, the question of whether the tax is void because it is unreasonable can not affect the result here reached. It would be unprofitable, therefore, to enter into a discussion of the first question propounded.

In the view we take of the case, the ordinance in question is absolutely void as being an unlawful interference with interstate commerce. The constitution of the United States declares that Congress shall have power "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." Const. U. S. art. 1, sec. 8, par. 3 (Civil Code, § 6644). The question arises, therefore, whether telegraphic messages are commerce within the meaning of the constitution of the United States. This question has been answered in the affirmative by the Supreme Court of the United States in the case of Leloup *v.* Port of Mobile, 127 U. S. 640 (8 Sup. Ct. 1383, 32 L. ed. 311), in the following language: "Where a telegraph company is doing the business of transmitting messages between different States, and has accepted and is acting under the telegraph law passed by Congress July 24th, 1866, no State within which it sees fit to establish an office can impose upon it a license tax, or require it to take out a license for the transaction of such business." "Telegraphic communications are commerce, as well as in the nature of postal service; and if carried on between different States, they are interstate commerce, and within the power of regulation conferred upon Congress, free from the control of State regulations, except such as are strictly of a police character; and any State regulations by way of tax on the occupation or business, or requiring a license to transact such business, are unconstitutional and void." "A general license tax on a telegraph company affects its entire business, interstate as well as domestic or internal, and is unconstitutional." In Western Union Tel. Co. *v.* Alabama State Board of Assessment, 132 U. S. 472, 473 (10 Sup. Ct. 161, 33 L. ed. 409), it was said that "The

principle is, in regard to telegraph companies which have accepted the provisions of the act of Congress of July 24, 1866, sections 5263 to 5268 of the Revised Statutes of the United States, that they shall not be taxed by the authorities of a State for any messages, or receipts arising from messages, from points within the State to points without or from points without the State to points within, but that such taxes may be levied upon all messages carried and delivered exclusively within the State. The foundation of this principle is that messages of the former class are elements of commerce between the States and not subject to legislative control of the States, while the latter class are elements of internal commerce solely within the limits and jurisdiction of the State, and therefore subject to its taxing power. The following cases in this court have fully developed and established this proposition: Pensacola Tel. Co. *v.* Western Union Tel. Co., 96 U. S. 1 [24 L. ed. 708]; Telegraph Co. *v.* Texas, 105 U. S. 460 [26 L. ed. 1067]; Western Union Tel. Co. *v.* Massachusetts, 125 U. S. 530 [8 Sup. Ct. 961, 31 L. ed. 790]; Ratterman *v.* Western Union Tel. Co., 127 U. S. 411 [8 Sup. Ct. 1127, 32 L. ed. 229]; Leloup *v.* Port of Mobile, 127 U. S. 640 [8 Sup. Ct. 1383, 32 L. ed. 311]; Fargo *v.* Michigan, 121 U. S. 230 [7 Sup. Ct. 857, 30 L. ed. 888]; Philadelphia and Southern Steamship Co. *v.* Pennsylvania, 122 U. S. 326 [7 Sup. Ct. 1118, 30 L. ed. 1200]." It appears in the recital of facts in this case that the plaintiff had accepted the provisions of the act of Congress of July 24, 1866 (sections 5263 to 5268 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3579)), just referred to. The State can not, in the exercise of its police power, defeat or impair a right guaranteed by the constitution of the United States, or any valid law passed by Congress in pursuance thereof. Gibbons *v.* Ogden, 9 Wheat. 1, 210 (6 L. ed. 23); M., K. & T. Ry. Co. *v.* Haber, 169 U. S. 613, 625, 626 (18 Sup. Ct. 488, 42 L. ed. 878). And see Williams *v.* Talladega, 226 U. S. 404 (33 Sup. Ct. 116). The construction placed upon the constitution of the United States and laws passed by Congress in pursuance thereof by the Supreme Court of the United States is binding upon State courts. In the agreed statement of facts it appears that "The Postal Company was and is engaged principally in the transmission of telegraph messages between different points in the several States

of the United States, and between those points and foreign countries, and is therefore engaged in doing an interstate-commerce business." It follows from the facts in this case, and the decisions of the Supreme Court of the United States cited supra, that the ordinance of the City of Cordele in question is an unlawful interference with interstate commerce, and is therefore unconstitutional and unenforceable. *All the Justices concur.*