## POSTAL TELEGRAPH-CABLE COMPANY *v.* MAYOR AND COUNCIL OF CORDELE.

1. A municipal ordinance imposing an annual occupation tax on each telegraph company doing an intrastate business in the city (excluding interstate business and messages sent by the United States or its officers or agents) will be treated as prima facie reasonable and valid, nothing to the contrary appearing on the face of the ordinance. But a telegraph company subject to such a tax may show it is so unreasonable in amount as to be confiscatory or an arbitrary and unlawful interference with business.

(a) While the amount of intrastate business done by a telegraph company at the office in the city imposing the tax, and whether the business has been done at a profit or not, are circumstances for consideration in determining whether a license tax of a certain amount, imposed for revenue on such companies by a municipality, is reasonable, a general view of the business of telegraphing at that place, and the conditions affecting it, may be taken by the municipal authorities in fixing the amount

of the tax; and the courts will not declare such tax to be unreasonable and void unless it is clearly so.

(b) Upon review of all the facts disclosed by the undisputed evidence in this case, the license tax of $100 per annum imposed by the. City of Cordele on each telegraph company doing an intrastate business therein (excluding interstate business, and that done for the government of the United States, its officers or agents) is excessive, unreasonable, and confiscatory, and therefore invalid.

2. The facts of the case bring it within the ruling in *Atlantic Postal Telegraph-Cable Company* v. *Mayor and Aldermen of Savannah,* 133 *Ga.* 66 (65 S. E. 184), and not within the ruling in the same .case when it was again before this court after a trial under the evidence. 136 *Ga.* 657 (71 S. E. 1115).

MAY 14, 1914.

Certified questions; from Court of Appeals. Case No. 5127.

"An ordinance of the City of Cordele laid a tax of one hundred dollars upon each and every telegraph company for business done exclusively within the City of Cordele, not including any business done to or from points from without the State of Georgia, and not including any business done for the government of the United States, its officers or agents. The Postal Telegraph-Cable Company, having failed to pay the tax, was adjudged guilty, and sentenced to pay the penalty prescribed. The following questions of law raised by the record, a decision of which is necessary to the determination of the case, are certified by the Court of Appeals to the Supreme Court, for instruction:

"1. Is the ordinance in question unfair, unjust, excessive, unreasonable, discriminative, and confiscatory, tending to destroy the Postal Telegraph-Cable Company's business; and will the enforcement of the tax amount to the taking of property of the Postal Telegraph-Cable Company without due process of law, contrary to the provisions of the 14th amendment to the constitution of the United States?

"2. Is the case controlled by the principle of the decision of the Supreme Court in the case of *Atlantic Postal Telegraph-Cable Company* v. *Mayor and Aldermen of Savannah,* 133 *Ga.* 66, and is the ordinance in question unreasonable and void under the principle of that decision; or do the facts bring the case within the principle of the decision in *Atlantic Postal Telegraph-Cable Company* v. *Mayor and Aldermen of Savannah,* 136 *Ga.* 657?

"The Court of Appeals respectfully refers the Supreme Court to the decision in the case of *Postal Telegraph-Cable Company* v.

*Mayor and Council of Cordele,* 139 *Ga.* 126, wherein it appears that the Court of Appeals certified to the Supreme Court for instruction the identical questions of law now certified, with the additional question whether the ordinance was void as being an unlawful interference with interstate commerce, and that the Supreme Court declined to decide the question whether the tax was unreasonable, holding that a decision of that question was rendered unnecessary by its decision that the tax was an unlawful interference with interstate commerce. The record in the present case contains a recital of all the facts upon which is founded the contention that the ordinance in question was unreasonable, discriminatory, and confiscatory, and a repetition of these facts here is not deemed necessary."

The record mentioned in and accompanying the questions of the Court of Appeals showed as follows: The Postal Telegraph-Cable Company, not having paid the license tax, was prosecuted before the recorder, under the provisions of the ordinance, and sentenced to pay a fine of $100. It carried the case to the superior court by writ of certiorari. On behalf of the mayor and council it was agreed that the statement of facts in the petition for certiorari should be adopted as the answer thereto. It was conceded that the license tax was not paid by the company, and the defense attacked the ordinance as invalid. The evidence introduced on the trial before the recorder, as set out in the petition for the writ of certiorari, and not controverted, showed, among other things, the following facts: The Postal Telegraph-Cable Company was and is engaged principally in the transmission of telegraphic messages between different points in the States of the United States, and between those points and foreign countries. Some years ago it accepted the provisions of the act of Congress approved July 24, 1866, and the amendments thereof, and is operating in accordance therewith. (See 14 Stat. U. S. 221; Rev. Stat. U. S. §§ 5263-5268; U. S. Comp. Stat. 1901, p. 3579.) Its office at Cordele is engaged in both interstate and intrastate business. Only two telegraph companies do business at that point. Prior to the entrance of the Postal Telegraph-Cable Company into the State of Georgia, and into that city, about 20 years ago, all of the telegraphic business in the State was done by the Western Union Telegraph Company or its predecessor, which thus enjoyed a monopoly of such business. By

reason of certain advantageous arrangements between that company and the railway companies operating their lines into and from the City of Cordele, and because it had a monopoly of the business, it alone had and still has the right and privilege to use the rights of way of the railway companies for the erection of poles and wires in connection with the business of telegraphing, with a few exceptions where such rights have since been acquired by the Postal Telegraph-Cable Company by condemnation. The former company enjoyed and still enjoys an exclusive privilege to use the equipment and other facilities furnished by the railway companies in and about the maintenance and operation of its telegraph lines. By reason of the superior advantages so enjoyed, and by reason of the long term of years during which it enjoyed a monopoly of the business of transmitting telegraphic messages in the State of Georgia and the City of Cordele, the Western Union Telegraph Company has a much larger number of offices in the State and in the United States than the Postal Telegraph-Cable Company has, the former company having in the State of Georgia about 545 offices, large and small, and the latter 40 offices, which ratio is substantially the same throughout the United States. For this reason the business done by the former company is largely in excess of that done by the latter. The gross receipts of the office of the Postal Telegraph-Cable Company at Cordele during the year 1911 amounted to $1,303.44, of which $825.32 was on account of interstate business, and $478.12 on account of intrastate business. The total expenses of the office at Cordele for that year amounted to $1,359.80, of which $860.75 was properly apportioned and chargeable to the interstate traffic, and $499.05 to intrastate traffic. For the year ending February 6, 1912, the gross receipts of the Western Union Telegraph Company at its Cordele office amounted to $4,299.36. The total expenses of the office amounted to $2,275.32. The receipts during that period on account of intrastate traffic amounted to $2,071.45. The expenses are apportionable between the interstate and intrastate businesses according to their respective amounts. These figures, as to both companies, do not take into consideration any interest on the investment in the city. The total interstate business done by the Postal Telegraph-Cable Company in the State during the year 1911 amounted in gross receipts to $231,062.17. The total expenses incurred by it in the operation of

the business during that year properly apportionable to interstate business, without taking into account any general office expenses or interest on the investment, amounted to $258,255.34. The intrastate business of that company in Georgia for the year 1911 amounted to $49,028.38. The expenses apportionable thereto amounted to $53,375.80. The taxable value of the property of the company in Georgia, including both its physical property and franchises, was assessed for the year mentioned at $231,717, and the part thereof located within the City of Cordele was fixed by the taxing authorities at $182. The ad valorem tax paid in the State amounted to $3,539.98, and in the distribution thereof, under the laws of Georgia, the amount received by the City of Cordele was $2.59. In addition to the ad valorem taxes paid by the company, it paid out by way of occupation taxes to the various municipalities in the State $2,072.67. During the year 1912 the gross receipts of the company at Cordele amounted to $1,148.87, less $19.63 bad debts, of which $533.83 was for intrastate business, and $615.04 interstate business. The total expenses of the office for that year amounted to $1,136.12, and the expenses of the office were properly apportionable to the interstate business and intrastate business according to their respective amounts. The total receipts of the Western Union Telegraph Company at Cordele for the year 1912 amounted to $4,053.57, and the total expenses of the office amounted to $2,650.41. Of the aggregate receipts of the office $2,045.57 arose from intrastate business. The expenses were properly apportionable between the two classes of business, according to the amounts thereof. The business of the Western Union Telegraph Company in the city and State is larger than that of the other company, because of the superior advantages of the former above mentioned, and because of its larger number of offices, and not because of its superior diligence, management, or business methods, which, under competition, might have reduced or so affected the business of the other company as to render it unprofitable. Telegraph companies are subject to the regulation of the State railroad commission as to intrastate business. The commission has fixed the tariff or charge for intrastate messages at 25 cents each, and has prohibited telegraph companies from demanding or collecting any charge in excess of that amount. The commission promulgated a rule or regulation prohibiting telegraph companies from discon-

tinuing any offices opened by them in the State, without first obtaining the permission or consent of the commission; and also a rule which requires telegraph companies operating their offices for interstate business in a city to likewise receive and transmit all intrastate messages offered to it. The levying of the tax against the Postal Telegraph-Cable Company by the City of Cordele is purely for the purpose of raising revenue. The city is put to no expense of any character in connection with the business done by the company within its limits, such as inspecting wires. The company has no poles within the corporate limits, its wires being strung upon the poles of other companies, which paid the license tax thereon. It does not transmit messages from one part of the city to another.

Upon the hearing of the return of the writ of certiorari the judgment of the recorder's court was affirmed. The judge of the superior court stated in the order: "the only ground in the petition insisted upon by counsel for petitioner being that the ordinance of the Mayor and City Council of Cordele, imposing an occupation tax of $100 on all telegraph and telephone companies doing business in Cordele, is excessive, unreasonable, and confiscatory so far as the petitioner is concerned, and is therefore void; all other grounds in the petition are expressly abandoned by petitioner." The case was carried by writ of error to the Court of Appeals, which has certified to the Supreme Court the questions above set out.

*Anderson & Rountree* and *J. T. Hill,* for plaintiff in error.
*Whipple & McKenzie,* contra.

LUMPKIN, J. (After stating the foregoing facts.) An ordinance passed by the municipal authorities of Cordele, which laid a tax of $100 on each telegraph company doing business in the city, covering both the interstate and the intrastate business of a company which had accepted and was acting under the act of Congress of July 24, 1866 (Rev. Stat. U. S. §§ 5263-5268), was held invalid. *Postal Telegraph-Cable Co.* v. *Mayor and Council of Cordele,* 139 *Ga.* 126 (76 S. E. 744, 31 Ann. Cas. (1914A) 984). Having held that the ordinance was invalid for the reason that it interfered with interstate business of the company, it was not deemed necessary to go further and decide whether it was also unreasonable. After this decision was rendered, the municipal council passed an ordinance similar to that then under consideration,

except that the tax was declared to be laid on business not including interstate business or that done for the government of the United States, its officers or agents. The tax was fixed at the same amount ($100) as when interstate business was included. The subject of taxation was lessened, but not the amount of the tax. The questions of the Court of Appeals refer to the entire record, and from the record it appears that there were no disputed questions of fact. The judgment of the superior court states that the only ground in the petition for certiorari insisted upon was that the ordinance imposing an occupation tax of $100 on each telegraph company doing an intrastate business in Cordele (exclusive of interstate business) was "excessive, unreasonable, and confiscatory so far as the petitioner is concerned, and is therefore void." We will confine ourselves, therefore, to that ground; and we consider it unnecessary to mention the other expressions employed in the question of the Court of Appeals.

1. It is conceded that the tax under consideration is purely for the purpose of raising revenue. Home Insurance Company *v.* City Council of Augusta, 93 U. S. 116 (23 L. ed. 825). Accordingly it is unnecessary to discuss cases of taxes on the basis of poles, where the police power of protection against danger, by means of inspection, was involved. Nor is it necessary to attempt to lay down any precise limitation upon the power of municipalities to levy an occupation or license tax for revenue. Each case can better be dealt with on its own facts. It is sufficient for the present purpose to declare (what is already well settled) that such a tax must not be so unreasonable as to be confiscatory, or an arbitrary and unlawful interference with private business, and to determine whether the tax under consideration is subject to that objection. It was agreed that the charge for intrastate telegrams is limited by a rule of the State railroad commission; that another rule requires telegraph companies operating their offices for interstate business to likewise receive and transmit intrastate messages; and that still another prohibits a telegraph company from discontinuing an office in this State without first obtaining the consent of the commission. It is thus not purely a matter of option whether the company thinks it desirable to continue business in a given place or to withdraw at will; nor can it increase its intrastate rates at pleasure, if it considers this municipal tax burdensome. This company has

paid its ad valorem tax on its property in this State, and in the distribution thereof $2.59 has been received by the City of Cordele, being in proportion to the value of its property in that city ($182). In 1911 the gross receipts of the company at its Cordele office amounted to $1,303.44, of which $478.12 was from intrastate business. The gross expenses amounted to $1,359.80, of which $499.05 was properly apportionable to intrastate business. So that for the year 1911 intrastate business at that office was conducted at a loss. In 1912 the gross receipts amounted to $1,148.87, less $19.63 bad debts, of which $533.83 arose from intrastate business. The total expenses of the office were $1,136.12, which should be apportioned between the interstate and the intrastate business. Thus for that year receipts and expenses applicable to intrastate business were about equal. This does not take into consideration any interest on the investment in Cordele. Its sole competitor only made about $700 above expenses from intrastate business at that office during each of the years 1911 and 1912. The evidence shows that the difference in earnings by the two companies was not due to negligence or other like cause affecting the Postal Company, but to certain advantages on the part of the other company arising from contracts with railroads, etc. Other facts shown and bearing on the general situation will appear from the statement of facts.

We recognize the rule that municipal councils have large discretion in regard to what is a reasonable occupation tax, and that their determination will not be declared unreasonable by the courts unless it is clearly so. They are not obliged in each case to make an occupation tax a graded one, though they may make reasonable classifications, resting on some legitimate basis. It is not necessary to measure a business tax according to the receipts of the smallest among a number of dealers engaged in that kind of business; but the particular business within the municipality as a whole should be considered, and the conditions affecting it. *Mayor and Aldermen of Savannah* v. *Cooper,* 131 *Ga.* 670, 676 (63 S. E. 138). The statement in the headnote case of *Southern Express Company* v. *Ty Ty,* 141 *Ga.* 421 (81 S. E. 114), seems to go further than we need go in this case, and does not discuss the conditions to be considered in declaring a municipal tax unreasonable and void. In *City of Troy* v. Western Union Telegraph Co., 164 Ala. 482 (51 So. 523, 27 L. R. A. (N. S.) 627), it was held that a license tax of

$100 for revenue, exacted by a municipal corporation from a telephone company doing an intrastate business therein, was not shown to be unreasonable and void as to a particular company merely because that branch of its business was conducted at a loss for the year for which the tax was levied. A similar ruling was made in Williams v. City of Talledega, 164 Ala. 633 (51 So. 330), decided on the same day. In each of these cases the limitation on the municipal power to impose a license tax was recognized, but it was held that the fact mentioned was not alone sufficient to show an abuse of the power or of the discretion of the municipal council in its exercise. Similarly see *Atlantic Postal Telegraph-Cable Co. v. Mayor and Aldermen of Savannah,* 136 *Ga.* 657 (71 S. E. 1115). The present case does not rest on that fact alone, but upon that and others. After a careful review of the entire facts, including the nature, character, and extent of the business at that place and the conditions affecting it, as they appear in the record, we think that it clearly appears that the tax of $100 was excessive, unreasonable, and confiscatory, and therefore invalid.

2. From what is said above, it will appear that the present case falls within the ruling in *Atlantic Postal Telegraph-Cable Co. v. Mayor and Aldermen of Savannah,* 133 *Ga.* 66 (65 S. E. 184), when that case was considered on facts alleged in the petition and admitted by demurrer, rather than within the ruling in the same case when it again came before this court after a trial wherein the plaintiff failed to prove the facts as alleged, except that it operated at a loss its office in the city imposing the tax. 136 *Ga.* (supra).　　　　　　　　　　　　　　　*All the Justices concur.*