INTERSTATE COMPANY *v.* RICHARDSON, tax-collector.

10

No. 9222.   MAY 9, 1933.

*James C. Davis,* for plaintiff.

*Carter, Carter & Johnson, Lawrence S. Camp, attorney-general,* and *W. K. Meadow,* for defendant.

RUSSELL, C. J.   The Interstate Company filed a petition praying that the tax-collector of Fulton County be enjoined from collecting from petitioner a tax of $500 provided by sec. 2, par. 80, of the general tax act of 1927 (Ga. L. 1927, p. 81) imposing a tax "upon each person, firm, or corporation carrying on the business of selling books, magazines, papers, fruits, confections, or other merchandise on the railroad-trains in this State, $500." Petitioner alleged that it was engaged in the business of selling such merchandise on trains in this State; that travel by trains has been materially decreased by the operation of motor-buses, etc., and a large number of trains have been discontinued by the railroads in this State; that petitioner operates its business economically and upon a sound business basis, and is guilty of no extravagance; that it renders a needed service to the people; that during the years 1930 and 1931 it was unable to earn from its sales a sufficient sum to pay $500 tax for either of those years; that it would not earn enough to pay the tax during 1932; that petitioner and the Union News Company are the only two persons in this State engaged in selling merchandise on trains in this State; that no dealer engaged in the business of selling merchandise on trains in this State was earning a sufficient profit from such business to pay said tax; that said tax is unreasonable, pro-

hibitive, and confiscatory upon all dealers engaged in said line of business, and if said tax is collected it will force petitioner and other such dealers to give up a legitimate business; that said tax is a tax for revenue, and is not based on the reasonable value of the franchise originally conferred, nor upon its continued value from year to year. The petitioner alleged said tax is violative of the due-process and equal-protection clauses of the State and Federal constitutions, and prayed that the same be declared to be invalid and the collection thereof enjoined. An answer and general demurrer were filed by the defendant, the former denying the invalidity of the act in question, and the latter asserting that the petition set forth no cause of action and showed on its face that plaintiff had an adequate remedy at law. Upon the hearing the petitioner introduced its sworn petition, and an intervention filed by the Union News Company; also affidavits of officers of each company, as to the decrease in the business of petitioner and intervenor since the enactment of the statute in question, and the loss sustained by them in 1930 and 1931. The only evidence in behalf of the defendant was an affidavit of T. S. Respess, the material contents of which are stated hereinafter. Plaintiff objected that this affidavit was irrelevant; that it constituted merely the opinion of the witness, which was inadmissible inasmuch as the witness had not qualified as an expert; and that it was too vague, indefinite, and uncertain to be admissible as evidence upon facts concerning which the witness sought to testify. The court overruled the objections, and refused an injunction. The plaintiff excepted to these rulings.

The tax-collector claims to be acting under the provisions of sec. 2, par. 80, of the general tax act of 1927 (Ga. L. 1927, p. 81), which reads as follows: "Upon each person, firm, or corporation carrying on the business of selling books, magazines, papers, fruits, confections, or other merchandise on the railroad-trains in this State, $500. No county or municipality shall have authority to levy any additional tax for the privilege of carrying on said business." The plaintiff contends that this tax is imposed for revenue purposes; that the amount of the tax must be based upon the reasonable value of the privilege granted; that the tax must be based upon the continued value of the privilege from year to year; that the imposition of this tax will result in forcing every dealer in the State out of business, because no dealer can earn a sufficient profit

to pay the tax; and therefore that the court should declare it to be unconstitutional, and enjoin its enforcement. Evidence was introduced, showing that the Interstate Company, in operating its business of selling merchandise upon railroad-trains in this State, not only did not earn a sufficient amount of money to pay the tax of $500. but actually lost more money than the occupation license tax. It may be conceded, as insisted by able counsel for plaintiff, that a tax for revenue must not be arbitrary, oppressive, or prohibitory, and that as a general rule the amount of the tax must have a reasonable relation to the value of the business done and of the privilege of carrying on the business which is granted; but we can not concur in the opinion that there is any obligation upon the part of the State, in the exercise of its taxing power, to insure or guarantee that any business will continue to be profitable at all times and under all conditions. While the showing of the conditions of its business as made by the Interstate Company for the years 1930 and 1931 is most deplorable, in most instances an adjudication as to whether a particular tax is unreasonable, arbitrary, or oppressive must be determined by the conditions at the time the act was passed. It appears from the evidence that the plaintiff did not lose money in 1928, the year following the passage of the act, and that it made money in the year 1929. So we think it is clear from this that the General Assembly had no intention in 1927 of driving the business upon which it imposed the tax out of the State, or of confiscating its business or its property. The mere fact that a business subjected to an occupational license tax may not succeed, or may lose money instead of making money, will not authorize the conclusion that such is either unreasonable, arbitrary, or oppressive. We think this well-settled principle answers the exception based upon the ground that the act of 1927 violates art. 1, sec. 1, par. 2, and art. 1, sec. 1, par. 3, of the constitution of Georgia of 1877, and the fifth and fourteenth amendments to the Federal constitution.

Furthermore, the judge had before him evidence to the effect that the plaintiff was engaged in other businesses, such as the operation of lunch-rooms, soda-fountains, etc., and some of the loss upon the merchandising business upon trains might be traced to the fact that the management of so many different businesses so distracted the attention of the company from the smaller business of selling minor articles upon trains that perhaps the Interstate Company did not

give sufficient attention to the management of that phase of its business. It may have operated upon too many trains in the circumstances, or upon too few, or not upon trains as profitable as others might have been. Certainly the fact that the company paid taxes in several municipalities of this State in the conduct of business not conducted upon railroad-trains, and not within the scope of the business upon which the tax now in question was imposed, was of no relevancy to the issues before the court. The cases of *Postal Telegraph-Cable Co.* v. *Cordele,* 141 *Ga.* 658-664 (82 S. E. 26), *Atlantic Postal Tel. Co.* v. *Savannah,* 133 *Ga.* 66 (65 S. E. 184), *Morton* v. *Macon,* 111 *Ga.* 162 (36 S. E. 627, 50 L. R. A. 485), and a number of similar cases cited by diligent counsel for the plaintiff, related to municipal ordinances imposing license taxes. It must be borne in mind that the tax which we are now considering was not the result of a municipal ordinance, but of an act of the State legislature, and the law recognizes a marked difference between the two. The citation from Air-Way Electric Appliance Cor. *v.* Day, 266 U. S. 71 (2) (45 Sup. Ct. 12, 69 L. ed. 169), "A tax upon the privilege of a foreign corporation to do business in the State should bear some relation to the value of the privilege," states a sound principle of law, to which we bow respectfully; and when we consider the evidence before the court as to the number of railroad-trains upon which the Interstate Company was given the privilege of vending merchandise, and then reflect that for the exercise of this privilege the State assessed only a license fee of $500, we can not say that the legislature was exorbitant in fixing the amount it did, while the privilege extended throughout the State, and at the same time forbade any county or municipality from imposing a like tax. As said by Mr. Justice Miller in State Railroad Tax Cases, 92 U. S. 575, 614 (23 L. ed. 663), as to State legislative enactments: "A court of equity is . . hampered in the exercise of its jurisdiction by the necessity of enjoining the tax complained of, in whole or in part, without any power of doing complete justice by making, or causing to be made, a new assessment on any principle it may decide to be the right one. In this manner it may, by enjoining the levy, enable the complainant to escape wholly the tax for the period of time complained of, though it be obvious that he ought to pay a tax if imposed in the proper manner." In the same decision it was said: "If taxes were assessable alone on the value of

the capital stock and franchises of the corporation, cases might be found where these were worth nothing, and such companies would pay no tax even for their real estate and personal property. And this is precisely the main argument of counsel for the Toledo, Peoria, and Warsaw Railroad Company, in opposition to the law and to the rule of the board of equalization. But individuals do not escape taxation on their real and personal property because they are insolvent. In several of the States many men in effect pay tax on their lots or lands, and on the mortgage which covers it and exceeds it in value, and on a large amount of personal property, while the mortgage debt exceeds in amount all that they are worth in the world. No State has ventured to establish the principle of permitting its visible, tangible property to escape taxation, relying solely on a tax imposed on the individual on the basis of his estimated wealth in excess of his debts."

This brings us to the exception that the court erred in admitting certain testimony of T. S. Respess, who testified that he was an auditor, and "that in connection with his business he has audited many types of businesses during the past few years, and by reason of his experience and the knowledge gained by him in auditing various businesses he knows general business conditions; that in connection with his experience he has found that a very small number of business concerns in the State of Georgia are at present operating their business profitably; that in almost all cases the net result of business operations in this locality has been to show a deficit for the last several years; that this condition is abnormal, and with the return of business the large majority of firms audited by deponent will operate profitably; that one of the large items in all business today is the tax item and payment of taxes has become increasingly hard in the last few years; that in many cases occupation taxes paid by business concerns is a much larger percent. of their gross sales than in the case of the Interstate Company, as shown by affidavit referred to herein." We are of the opinion that this testimony was admissible, since it showed facts contradictory of the claim of the plaintiff. The petitioner contended that the tax was excessive, exorbitant and unreasonable, and therefore arbitrary and unconstitutional because the company in certain years lost money. The testimony of Respess was to the effect that almost every other line of business was in some degree in the same condition as the plaintiff

company; that it was a fact that since the year 1930 there had been a period of severe depression; and that many lines of business heretofore profitable had been operated at a loss and had been unable to make enough to pay their taxes. Upon the theory maintained by the plaintiff, if the tax now under consideration can be set aside, very many paragraphs of the tax act can likewise be nullified, with such damage to the operation of the State government as might be impossible to describe. In any event, the only remedy for a tax statute which *after its enactment* may become too heavy is by *legislative action,* and not by *judicial decision.*

*Judgment affirmed. All the Justices concur.*