MORTON *v.* MAYOR AND COUNCIL OF MACON.

1. The mayor and council of a city have not, under a legislative grant of "authority to levy and collect a license tax . . upon all persons exercising any profession, trade, or calling within said city," the power to impose upon a useful and legitimate business a prohibitory tax.

2. "Lending money on household or kitchen furniture and wearing apparel" is, if lawfully conducted, such a business, and therefore one which can not be classed as injurious to the public, although some persons who make loans on such security may be usurers.

Argued March 19, — Decided July 10, 1900.

Certiorari. Before Judge Felton. Bibb superior court. February 9, 1900.

*M. Felton Hatcher* and *Guerry & Hall*, for plaintiff in error. *Minter Wimberly* and *Roland Ellis*, contra.

LUMPKIN, P. J. Section 72 of the charter of Macon provides: "That the mayor and council shall have power to license, regulate, and control all hotels and public houses within the city; also, to regulate all butcher-pens and slaughter-houses within the corporation, and to remove the same if they shall become nuisances or injurious to the health of the city. They shall also have power to license drays, hacks, and other vehicles used for business purposes, and to regulate the same. They shall also have full power to regulate and control all livery-stables, pumps, barrooms, restaurants, places of amusement, telegraph, telephone, and electric companies, all gas, water, and railroad companies doing business or seeking to do business within said city." Section 79 confers upon the mayor and council "power to levy and collect a tax . . upon all persons exercising within the city any profession, trade, calling, or business of any nature whatever;" and section 84 declares: "That said mayor and council shall have authority to levy and collect a license tax . . upon all persons exercising any profession, trade, or calling in said city, when not prohibited from so doing

by the constitution and laws of this State ; to compel the payment of the same; to make all suitable laws and regulations necessary and proper to carry out the powers herein conferred, and to prescribe suitable penalties for the violation thereof." The tax ordinance of the city for the year 1900 imposed a tax of $500 upon "money-lenders, copartners, associations, corporations, or individuals, lending money on household or kitchen furniture and wearing apparel." It further provided that this license tax should be paid "by January 15, 1900, or within fifteen days from commencing business," and declared that all persons failing to comply with this provision should "be deemed guilty of doing business without a license." and subject to a prescribed penalty. Morton was, in the recorder's court, convicted upon a charge brought against him of doing business in violation of this ordinance. He thereupon sued out a certiorari to the superior court, to the overruling of which he excepted. At the trial before the recorder it was affirmatively proved that the tax in question was, in effect, prohibitory. It also appeared that Morton and other money-lenders of the class described in the ordinance exacted from their customers exorbitant and usurious rates of interest. Did the municipal authorities, under and by virtue of the above-recited provisions of the city's charter and in view of the fact last mentioned, have power to impose such a tax? As this is the main and controlling question in the case, we will confine ourselves to a discussion of it, without noticing the minor points presented by the bill of exceptions.

There is a very wide difference between a power to license an occupation with a view to regulation and a power to tax it for the sole purpose of raising revenue. "A power to license, when specifically given in the charter of a city, is . . a police power. The exaction of license fees for revenue purposes is the exercise of the power of taxation." North Hudson Railway Co. v. Hoboken, 41 N. J. Law, 71. As will have been perceived, the General Assembly in the 72d section of the charter of Macon dealt expressly with the question of empowering the municipal authorities to license, regulate, and control occupations carried on within the city, and, in so doing, specifically enumerated the various callings to which their powers in these respects should apply. Among them we find no mention of money-

lenders. The mayor and council therefore have not, under this section, any power to exercise police supervision over the business of persons whose occupation it is to lend money. Nor can the municipal authorities rightly claim that any such power is given them by the provisions contained in section 84. The term "license tax," as therein used, can not be understood as expressly conferring, or even implying, a grant of power to regulate the professions, trades, or callings which are by this section made the subject-matter of taxation. On the contrary, this term, as here employed, has relation strictly to the power of taxation, and not to that of police regulation. We are further of the opinion that no right to regulate or supervise is derivable from the concluding provisions of this section, whereby the municipal authorities are empowered "to make all suitable laws and regulations necessary and proper to" enforce payment of the tax, "and to prescribe suitable penalties for the violation thereof." To our minds it is clear that these provisions can not be tortured into a grant of power to regulate or to exercise police supervision over the various occupations upon which the license taxes may be imposed. Obviously it was the legislative intent simply to confer upon the mayor and council power "to compel the payment of the" taxes by adopting such ordinances looking to that end as might be necessary and proper. Our views respecting those portions of the charter of Macon with which we are now concerned coincide with those expressed in the case of Fretwell *v.* Troy, 18 Kan. 271, in which it was held that power to levy and collect a "license tax" on specified occupations "was designed for purposes of revenue rather than of police regulation." The question before us is, therefore, resolved into simply this: Does a power given by law to a municipal corporation to tax a useful and legitimate business include the right of imposing upon it a tax so high as to render it impossible to pay the same and carry on the business profitably?

As the purpose of such taxation is to raise money for the support of the municipal government, and as the power of taxing is given exclusively for the accomplishment of this needful purpose, ordinances adopted in pursuance of this power must tend to effectuate, and not to defeat, the end in view. Cooley's

Const. Lim. (6th ed.) 240, 241.   We find the following in Coo-
ley on Taxation (2d ed.) 597—8:   "If a revenue authority is
what seems to be conferred, the extent of the tax, when not
limited by the grant itself, must be understood to be left to the
judgment and discretion of the municipal government, to be
determined in the usual mode in which its legislative authority
is exercised; but the grant of authority to impose fees for the
purposes of revenue would not warrant their being made so
heavy as to be prohibitory, thereby defeating the purpose."
In 13 Am. & Eng. Enc. L. it is, with reference to the imposi-
tion of license taxes on useful trades and occupations, laid
down that a municipality is not "authorized to entirely prohibit
the exercise of the trade or occupation by any excessive license
fee."   See pages 532—534, and cases cited in notes.   Under a
Nebraska statute relating to cities of the "second class," the
City of Lincoln was authorized "to raise revenue by levying
and collecting a license tax on any occupation or business within
the limits of the city, and regulate the same by ordinance."
The Supreme Court of that State, in the case of Caldwell v.
City of Lincoln, 19 Neb. 569, held that taxes imposed by vir-
tue of this act "must be reasonable, considering the nature of
the business, and not so high as to prohibit the carrying on of
the business."   See, also, in this connection, Ex parte Burnett,
30 Ala. 461; Craig v. Burnett, 32 Ala. 728.   In the Kansas
case, cited above, Mr. Justice Brewer plainly indicated that in
his opinion it was not true "that a city having authority to col-
lect revenue by license may impose any sum, however large, as
license, and thus in effect destroy certain kinds of business."
See 18 Kan. 275.   In City of Lyons v. Cooper, 39 Kan. 324, it
was expressly ruled that, under legislative authority to levy
and collect "just and reasonable" license taxes from persons
pursuing designated occupations, "an ordinance of such city
purporting upon its face to be enacted for the levying and col-
lecting of a license tax, but which is a clear and palpable attempt
to destroy and forbid a legitimate, necessary, and commendable
business, is void and can not be enforced."   The tax then un-
der review was held to have been laid, "not for revenue, but for
destruction," and therefore wholly unauthorized.   As all taxes
ought to be "just and reasonable," we do not think the Kansas

statute, by stipulating in express terms that the license taxes which it authorized the city to impose should be so, was really more restrictive than an act which in general terms merely gives the power to tax. Chief Justice Horton, in denying the right of the city to levy the tax complained of, took the ground that even where the power embraced authority to both regulate and tax, the city could not make the tax so large as to be prohibitory. He said: "The grant of authority to a mayor and city council to impose license fees for the purposes of revenue would not warrant them to be so heavy as to be prohibitory, thereby defeating the purposes. Where the grant is not made for revenue alone, but for regulation also, and the business is one that does not injuriously affect the public interests, or lead to disorder or to increased necessity for police supervision, like the sale of intoxicating drinks as a beverage, the license fee, while somewhat within the discretion of the mayor and council, ought not to and can not be so excessive as to prohibit or destroy a business carried on for necessary purposes." Page 327.

On the same line is the case of Hirschfield *v.* City of Dallas, 29 Tex. Ct. App. 242, wherein it was held that a tax "laid for the double purpose of regulation and revenue must be grounded in both the police and taxing power; but the grant of a power to tax will not authorize the imposition of a burden in its nature and purpose prohibitory." White, P. J., expressed the opinion that, under its broad charter power to "license, tax, and regulate" occupations, "the city was empowered not only to exact a reasonable license fee and license for the purpose of regulating the occupation under its police power, but to impose, if it desired to do so, a reasonable tax for purposes of revenue on the pursuit of the occupation." Page 245. The word "reasonable," twice used in the clause just quoted, is of the utmost significance in arriving at its meaning. It is true that, on the same page, this learned judge does say that "Some occupations are so injurious that a tax prohibitory entirely would be justifiable," and the same idea has been advanced by Judge Cooley. After stating that license fees may be imposed (1) for regulation, (2) for revenue, (3) to give monopolies, and (4) for prohibition, and declaring that "the third purpose is inadmissible in any free government," he says: "The fourth purpose

is entirely admissible in the case of pursuits or indulgences which in their general effect are believed to be more harmful than beneficial to society, and which, consequently, the public interest requires should be put an end to. A case of this nature is that of heavy fees imposed on the keepers of implements of gaming. When, however, prohibition is the object, the end may generally be more directly accomplished by legislation which in its terms is prohibitory, than by the circuitous method of imposing a burden difficult or impossible to be borne, and the direct method is consequently the one usually adopted." Cooley on Taxation (2d ed.), 592, 593. We think the best way to prohibit is to prohibit. But be this as it may, the charter of Macon did not expressly confer any power to prohibit; and moreover, even if such a power, relatively to injurious pursuits, could be inferred from its provisions, the business of money-lenders of the particular class sought to be taxed by the ordinance now under consideration is not on its face an injurious one, but one which, if carried on without violating the usury laws, would apparently be beneficial to people of small means. It is to be observed that the tax is not imposed on usurers. Indeed, it is doubtful whether the city could license their unlawful calling, for it can hardly be supposed that the legislature deliberately intended to authorize the collection of taxes upon forbidden pursuits, and thus give at least a qualified sanction to the carrying on of the same. The fact that some money-lenders practiced usury can not be held to make the useful and legitimate business to which the ordinance applied one which should be considered as per se hurtful. There is scarcely any calling which unscrupulous persons can not, if they choose, carry on in an unlawful manner.

Before concluding, it is proper to remark that the question above discussed widely differs from that which might arise respecting the validity of a tariff imposed by Congress ostensibly for revenue, but really for protection and in effect prohibitory, or upon the constitutionality of a State statute professing merely to tax a particular occupation but in fact designed to destroy it. We may, for the purposes of this case, grant to the fullest extent the authority of the lawmaking power of the Nation or of any State to respectively enact laws of the nature above in-

dicated, without touching the question we have herein undertaken to decide. Granting that the General Assembly of this State might tax out of existence useful occupations, and even that it might in terms empower a city so to do, we are perfectly certain that nothing of the kind has been attempted in the present instance. The City of Macon may tax occupations, but there is nothing in its charter which either expressly or by implication authorizes it to directly suppress any legitimate business, or to indirectly accomplish such a result under the guise of an ordinance purporting to impose a license tax for the purpose of raising revenue but having for its real object the prohibition of that very business. The foregoing, we think, conclusively establishes the propositions laid down in the headnotes; and it results that so much of the Macon ordinance as seeks to impose the tax of which the plaintiff in error complains is void. That the courts have the power to declare inoperative municipal ordinances which are ultra vires or unreasonable and oppressive is too well settled to require argument or the citation of authority. The certiorari ought to have been sustained.

*Judgment reversed. All the Justices cuncurring.*