## ATLANTIC POSTAL TELEGRAPH-CABLE COMPANY *v.* MAYOR AND ALDERMEN OF SAVANNAH *et al.*

1. A city ordinance, made under the taxing power of the city's charter, imposing a tax on telegraph companies upon their business done exclusively within the city, and not including any business done to and from points without the State, and not including any business done for the government of the United States, its officers or agents, does not levy a tax on the interstate business of any telegraph company, and is not invalid as being an interference with interstate commerce.
2. A municipal tax on an occupation must be reasonable with reference to such vocation. In a petition to enjoin the collection of a municipal tax laid on a business solely for revenue, where such tax is alleged to be void for unreasonableness, and the specific allegations of the petition authorize that conclusion, it is error to dismiss the petition on general demurrer.
3. The legislative acts providing for the collection of taxes on the property and franchises of telegraph companies, as a unit, by the comptroller-general, do not restrict a municipality from imposing, under its charter power, a reasonable tax upon the business of a telegraph company transacted within the municipal limits.

Argued January 15, — Decided July 15, 1909.

Equitable petition. Before Judge Charlton. Chatham superior court. August 4, 1908.

*Anderson, Felder, Rountree & Wilson* and *Garrard & Meldrim,* for plaintiff. *Samuel B. Adams,* for defendants.

EVANS, P. J. On December 30, 1907, the Mayor and Aldermen of the City of Savannah adopted an ordinance imposing a tax on

the business of telegraph companies, the material parts of which are as follows: "An ordinance to assess and levy taxes and raise revenue for the City of Savannah; for the regulation of certain kinds of business in the corporate and jurisdictional limits of said city; fixing penalties for the violation of the revenue ordinances of said city; and for other purposes connected with taxes and revenue of said city. Section 1. The Mayor and Aldermen of the City of Savannah, in council assembled, do hereby ordain . . . Section 4. Every person transacting, or offering to transact, any of the kinds of business hereinafter specified (whether in connection with any other business or not) shall pay the tax hereinafter prescribed for every separate place in which he shall transact or offer to transact business, viz. . . Telegraph or telephone companies or exchanges, six hundred dollars each, without discount." This ordinance was amended on February 26, 1908, as follows: "Telephone or telegraph companies or exchanges, for business done exclusively within the City of Savannah and not including any business done to or from points without the State and not including any business done for the government of the United States, its officers or agents, six hundred dollars each, without discount." The Atlantic Postal Telegraph-Cable Company refused to pay the tax for the year 1908, levied under the ordinance as amended, and the municipal authorities issued execution against it for the amount of the tax, and placed it in the hands of the marshal of the city, with instructions to levy upon the telegraph company's property. The telegraph company filed its petition to enjoin the collection of the tax, and at the appearance term the petition was dismissed on general demurrer.

1. The imposition of the tax is claimed to be illegal, for the reason that under the original ordinance the tax was levied upon the entire business of the telegraph company, and was therefore a tax upon its interstate as well as its intrastate business, and was void as militating against the provision of the constitution of the United States regulating interstate commerce. It is contended further that the amendment is but an effort at evasion of this constitutional provision, because, while the tax laid in the original ordinance upon both interstate and intrastate business was restricted by the amendment to intrastate business, the amount of the tax was not reduced. It is clear that a municipality can not, without

infracting the provision in the Federal constitution reserving to Congress the right to regulate interstate commerce, impose a tax upon the entire business of a telegraph company engaged in both interstate and intrastate business.   In appreciation of a knowledge of this constitutional restraint, the municipal authorities made clear by amendment that it was seeking to collect a tax within its power to enforce.   From a mere failure to reduce the amount we can not impute to the municipal authorities an intention to evade the constitution of the United States, when by the amendment such an intent is positively disclaimed.   No point is made upon the power of the City of Savannah to levy a reasonable tax upon business occupations; but the contention of the telegraph company is that it is engaged principally in the transmission of messages between the different points in the several States of the United States, and had accepted the act of Congress approved July 24, 1866, and the amendments and supplements thereto, and is operating its business under the terms of these acts, and that its business is principally interstate in character.   It has been held by the Supreme Court of the United States that a city ordinance of the character of the one under review is not an interference with interstate commerce.,  Postal Telegraph-Cable Co. *v.* Charleston. 153 U. S. 692 (14 Sup. Ct. 1094, 38 L. ed. 871).

Another assault upon the validity of the tax is that under the allegations of the petition such tax is unreasonable and discriminatory, and that it is confiscatory, as tending to destroy its business, and that a seizure of its property under the execution to enforce the tax will be a taking of its property without due process of law, and contrary to the 14th amendment of the constitution of the United States.   The allegations upon which this attack is based are substantially these:   The telegraph company is engaged principally in the transmission of messages between different points in the several States of the United States, and between those points and foreign countries, and is therefore engaged in doing both an interstate and an international commerce business.   There are engaged in the business of transmitting telegraphic messages to and from the City of Savannah only two telegraph companies, namely, the Western Union Telegraph Company and the plaintiff.   Prior to the entry of petitioner in the State of Georgia and the City of Savannah about twenty years ago, all the telegraphic business was

done and controlled by the Western Union Telegraph Company or its predecessor, which maintained and enjoyed a monopoly of the telegraph business. By reason of certain advantageous arrangements between the Western Union Company and the railroads operating lines into and from the City of Savannah, and because of its monopoly of the telegraph business, the Western Union Company enjoyed the exclusive privilege to use the rights of way of the railroad companies for the erection of its poles and wires used in connection with its telegraphic messages, and also the exclusive privilege to use the equipment and other facilities furnished by the railroad companies in and about the maintenance and operation of its telegraph lines. Because of these superior advantages the Western Union Company has in existence and operation a much larger number of telegraph offices in the State of Georgia and the United States than the Postal Company, there being in operation by the Western Union Company about 554 offices, large and small, in the State, and by the Postal Company 71 offices, large and small, which proportion obtains substantially throughout the United States. It is for this reason that the business of the Western Union Company in the City of Savannah, both interstate and intrastate, is largely in excess of the business done by the Postal Company. During the year 1907 the total gross receipts derived by the Postal Company from its interstate business from Savannah was $27,659.58, while the expenses apportioned to such interstate business amounted to $35,227.16; and this estimate of the expense did not take into consideration the superintendence or general office expenses, or any interest on the investment of the company in this State. During the same year the total gross receipts derived from intrastate business done by it in the City of Savannah amounted to $5,403.94, while the expenses properly apportioned to such business, without taking into account the general office expenses and interest on the investment, was $6,860.24. The total interstate business of this company in the State of Georgia for 1907 amounted in gross receipts to $162,371, while the total expense incurred in the conduct of its business properly apportioned to interstate business, without taking into account general office expenses or interest on investment, amounted to $248,182.90. The total intrastate business done by the Postal Company in this State during that year amounted in gross receipts to $35,592.53, while the total expense on

such business was $54,479.17.   The taxable value of its property in Georgia, including its franchise, for the year 1907 was $300,000, and the proportion thereof located in the corporate limits of Savannah, as fixed by the proper tax-assessing authorities, was $2,107. The total ad valorem taxes paid by it in the State of Georgia were $2,323, and in the distribution thereof in accordance with the laws of this State the amount received by the City of Savannah was $20.83.   In addition to the ad valorem tax which will be required of it for the year 1908, the City of Savannah has also exacted of the Postal Company $49.50 as a tax on poles, which has already been paid.   During the year 1907 the Postal Company paid out, by way of occupation taxes to the various towns and cities in the State of Georgia, $1,545, and the occupation taxes which have already been levied against it by the several cities and towns of this State for the year 1908, prior to the filing of this bill, amount to $2,010.   Notwithstanding the fact that the Western Union Company does a larger gross business in the State of Georgia, in proportion to the number of offices operated by it in the State, the business, both interstate and intrastate, done by the Postal Company is proportionately equal to that done by the Western Union Company; so that the larger volume of business done by the Western Union Company can not be attributable to superior management, or other like.causes.   The Postal Company could not afford to continue business in Savannah if it were not for the advantages it derives therefrom in connection with the business done by it in other and more populous portions of the United States, where its patrons demand connection with the important towns and cities of the rest of the country, and the Savannah office is maintained for the purpose of meeting this demand.   The tariff which it may charge on intrastate business is subject to the rules and regulations prescribed by the railroad commission of this State, and this commission has promulgated rules and regulations which prevent the Postal Company from discontinuing any office opened by it, without the approval of the commission.   Because of these conditions, it is claimed that the ordinance is unreasonable, and the tax exacted by the City of Savannah, if annually allowed to be collected, will amount to a confiscation of its business in the State of Georgia.

In discussing the power of the City of Savannah to impose a tax upon a business occupation, Lumpkin, J., in the recent case of

*Mayor &c. of Savannah* v. *Cooper,* 131 *Ga.* 676 (63 S. E. 141), said: "Municipal ordinances must be reasonable. The limitations of the power of a city council in this regard are not to be measured by the more extensive powers of the State legislature. A city tax on an occupation must be reasonable with reference to such vocation. This does not mean that it must be adjusted to the amount of business of each individual, or limited exclusively by the receipts of some particular individual; but, considering that business within the municipality as a whole, the tax must be reasonable and not arbitrarily discriminatory. To illustrate, a tax on retail clothing merchants would not necessarily be held void at the instance of one merchant by showing that he did a very small business, and that the tax fell heavily upon him. If the individual business were small enough, it might be difficult to pay any tax. But this would not suffice to upset an ordinance imposing a reasonable and fairly adjusted tax upon such an occupation." In determining whether or not the amount of tax imposed by this ordinance is reasonable, it is pertinent to inquire from the allegations in the petition the exact nature of the tax which is sought to be collected. Is it a tax laid upon a business with a view to its regulation, or is it a tax levied for the sole purpose of raising revenue, or does it embrace both features? It appears that the city collects a separate tax upon the poles of the company which are located within its streets, and it is distinctly alleged in the petition that "the City of Savannah is put to no expense of any character whatsoever in connection with the business done by your petitioner within its corporate limits." Inasmuch as the corporate authorities of the city have seen fit to levy a separate tax upon the company's poles, which tax can only be justified upon the necessity of police supervision, and as no money is expended by the city in regulating the commercial business of the company, we must assume that the tax imposed upon the telegraph company is for the sole purpose of raising revenue. It is true that the purpose of the ordinance as expressed in its caption is to assess and levy taxes and raise revenue for the City of Savannah, and for the regulation of certain kinds of business within its corporate limits. But, in the light of the allegations of the petition, we must deal with the reasonableness of the tax as laid upon the business of telegraph companies solely for the purpose of raising revenue, and not for the purpose of regulation. There is a wide difference in the power to

tax a business with a view to its regulation, and the power to tax it for the sole purpose of revenue. The former inheres in the exercise of the city's police power, while the latter is an exercise of the power of taxation. A city has no authority, under its general power of raising revenue by taxation, to require a corporation or an individual engaged in a legitimate enterprise to yield to the necessity of abandoning the occupation because of an oppressive tax. *Morton* v. *Macon,* 111 *Ga.* 162 (36 S. E. 627, 50 L. R. A. 485). The complaining telegraph company alleges, as a reason why the tax of $600 for doing business in the City of Savannah is unreasonable, that no corporation or individual possessing adequate capital, and managed in a prudent way, with reasonable facilities for doing a telegraphic business in this State, can enter into business in the City of Savannah, and pay, in addition to the other burdens imposed by the city, a tax of $600 upon its business. In order to bring itself within the operation of this principle it is alleged, that its failure to do a successful business in Savannah is not attributable to lack of business ability in its managing officials; that it has 71 offices in the State; that because of its extensive operations in other States of the United States, and its connection by cable with foreign lands, it has such facilities, at least, as would be expected of an average company undertaking to do business in the City of Savannah. It also alleges that its competitive company secured the major portion of its business because, being a pioneer in the field, it enjoyed certain monopolies which new companies are not able to get. It is alleged that the total value of the company's property in the City of Savannah, including its franchise, was $2,107, and the gross income of that office from intrastate business in 1907 was about $5,500. The city collects an ad valorem tax of $20.80, and a tax on poles of $49.50, and is seeking to collect an additional business tax of $600. Of course the success or failure of a corporation or individual in the prosecution of a particular business will not be conclusive upon the reasonableness or unreasonableness of the municipal tax upon that business. Therefore the assertion that the company has done business at a loss in Savannah is only a circumstance to be considered in adjudicating the reasonableness of the tax. But when it appears that only two corporations are engaged in the same business in a municipality, equipped with the average facilities of doing such business, it is no reply to an attack upon the reasonableness of

a tax upon that business, levied solely for revenue, to say that one company is not complaining that the tax is an unreasonable burden on its business. And particularly is this true where it appears that the corporation which does not contest the reasonableness of the tax has acquired exclusive privileges and other fortuitous advantages from being a pioneer in the field, which were not open to competitors who begin business after the older company had become thoroughly entrenched in its monopoly. The petition alleges that the tax is unreasonable, and presents certain facts as criteria for that conclusion. The demurrer is general. We think the allegations of the petition are sufficient to call upon the city to show that the tax is reasonable, either by contesting the truth of the plaintiff's allegations, or by showing other matters which may tend·to explain or lessen the evidentiary value of the plaintiff's allegations if proved on the trial. The reasonableness of the license tax of $500 was not involved·in the case of Postal Tel. Co. v. Charleston, supra. The point in that case was whether the tax therein levied was an interference with interstate commerce.

3. The last ground of assault upon the municipality's right to collect this tax is based upon the contention that the ordinance is void, so far as it undertakes to tax the telegraph company, because the provisions of the law of the State of Georgia for the collection of taxes from telegraph companies, and the distribution thereof to the counties and cities of the State through the comptroller-general of the State, are exhaustive of the right to tax telegraph companies. It is alleged that the telegraph company is engaged exclusively in the business of transmitting messages into and out of the City of Savannah from and to other points, and is not engaged in transmitting any messages between points within the city limits. The provisions of law to which reference is made relate to the collection of the taxes upon the physical properties and franchises of telegraph companies. See Pol. Code, § 780; Acts of 1907, p. 40. It must be borne in mind that the tax laid by the ordinance under consideration is not upon the property, but upon the business of a telegraph company. This point is so clearly presented in an opinion filed by the learned judge in the trial court that we take the liberty of adopting it as our reply to the plaintiff's contention in this respect. Says the trial judge: "Business, in the sense in which occupation tax is applied, does not, generally speaking, mean property. It means

the activity, the energy, the capacity, the opportunities by which results are reached—a. condition rather than fixed tangible objects from which conditions arise.    Two men may engage in the same business, the one with a million dollars and the other with one thousand dollars, and the latter from business capacity and opportunity may make the profit, and the other from lack of it accumulate nothing but disappointments.    This complainant has doubtless all the necessary physical resources to command profit—it asseverates its equal management—but, lacking business, it accumulates loss whilst its rival with equal resources and superior opportunities makes profit. The sending and receiving of telegrams is as much a business as the receiving of applications and the issuance of insurance policies, or the purchase and sale of cotton.    It is not the cotton which is business, or the policies, or the telegraph blank.    These are the indicia of that in which the individual engages.    The business is the occupation, the engaging, the doing of the varied commercial acts, and the taking of the requisite steps from which result conclusions and conditions.    The authorities tax the property on the land of one man, the money in the hands of another; and to the third man, who undertakes to apply his talents and skill to transpose the money and the property, a charge is made for doing so habitually.    There is scarcely a decision cited in which the business of telegraph companies is not referred to in some way.    It is to be found, for instance, in Leloup *v.* Mobile, 127 U. S. 647 [8 Sup. Ct. 1383, 32 L. ed. 311] ; Kehrer *v.* Stewart, 197 U. S. 69 [25 Sup. Ct. 493, 9 L. ed. 663] ; Osborne *v.* Florida, 164 U. S. 656 [17 Sup. Ct. 214, 41 L. ed. 586] ; Postal Co. *v.* Charleston, 153 U. S. 692 [14 Sup. Ct. 1094, 38 L. ed. 871] ; *Atlanta National Asso.* v. *Stewart,* 109 *Ga.* 80 [35 S. E. 73] ; *Mutual Reserve Asso.* v. *Augusta,* 109 *Ga.* 78 [35 S. E. 71] ; *Wright* v. *Southern Bell Tel. Co.,* 127 *Ga.* 229 [56 S. E. 116] ; Acts 1907, p. 40, sec. 107.    The very petition under consideration bristles with the expression.    Save only the last, every page proclaims the business, now interstate, now intrastate, now done in Savannah.    Surely it means something when neither courts nor litigants can consider this question without the natural employment of a term which does not refer to physical appliances or property, but to some activity which produces results.    Assuming then that business is done in Savannah beyond interstate business, is it taxable by the municipality?    If the decision in 78 *Ga.* 119 [*City Council* v.

*Central R. Co.*] governs, it is not. If this case can be differentiated, then in my judgment the ordinance is valid and operative. Say the court (78 *Ga.* 119) : 'The ordinance of the city, taxing railroads, is not a tax on business occupations. A railroad itself does not carry on any business occupation; it is merely property; it is not a person or an individual, so as to be an inhabitant or resident of the City of Augusta. If a railroad company, which is a corporation, should carry on a business in the city of Augusta, such as warehouseman, broker, drayage or commission business, etc., it would be liable to be taxed as any other person carrying on a like business. But if the railroad company merely does such business as they are authorized to do under their charter as carriers of freight and passengers, there is no authority in the City of Augusta to levy a specific tax against them for such business or occupation; but the right to tax such corporations is reserved to the State by the act of the legislature of 1874, page 103.' The act of 1874 upon which the court based its decision is important. What the court doubtless had in mind was section 3 (page 103) which declares 'that all railroad companies incorporated in this State shall pay an annual tax of one half of one per cent. on their net earnings, and section 7 exacts that they shall make returns for taxation to the comptroller-general. Whilst in section 5 telegraph companies are required to pay a tax of one per cent. on their gross earnings, making quarterly returns to the comptroller-general, the right of municipalities to impose occupation taxes is distinctly recognized, as is the fact that telegraph companies have a 'business.' It is said, 'that when any express, telegraph . . company in this State have increased their rates of charges on account of any State, county, or municipal taxation being levied on the property, receipts, income, or the license for the privilege of doing business in this State, or in the various cities, towns, and counties thereof, they shall return, under oath, such amount of extra charges made during the quarter as herein required for the gross receipts, and on such amounts shall pay a tax of one hundred per cent.' Thus the act of 1874, which was the inspiration of the decision in the 78th *Georgia*, in terms recognizes the right of municipalties to impose occupation taxes on telegraph companies, and undertakes to penalize those companies if in resistance they raise rates,"

*Judgment reversed. All the Justices concur.*