## WILLIAMS v. MAYOR AND COUNCIL OF WAYNESBORO.

1. Where a city has full power to tax an occupation, it may increase the rate on the particular class of persons engaged therein at any time before the expiration of the period for the enforcement of the tax, after the tax first levied has been paid.
2. The mayor and council of a city have not, under legislative grant of authority to levy occupation taxes, the power to impose upon a useful and legitimate business a prohibitive tax.
3. The occupation tax of $300 on ice dealers in the City of Waynesboro, and $100 additional on each wagon employed in such business, is unreasonable, prohibitive, and confiscatory, under the facts in this case.

No. 2625. FEBRUARY 17, 1922.

Petition for injunction. Before Judge Hammond. Burke superior court. April 22, 1921.

Williams filed his petition to enjoin the enforcement of an ordinance of the City of Waynesboro, which imposed an occupation tax of $300 on dealers in ice and an additional tax of $100 for each wagon used in its delivery, on the ground that it was unreasonable and oppressive. This ordinance was passed on April 4, 1921. Prior to that time the occupation tax on ice dealers was $25. The plaintiff had been engaged in the business of selling ice in Waynesboro for a number of years prior to the enactment of this ordinance. The revenue year in that city runs from October 1st of one year to October 1st of the next year. Williams used three wagons in connection with his ice business; and under this ordinance would have to pay a tax of $600 per annum. For lack of money he was unable to pay this tax and would have to go out of business.

The members of the city council of Waynesboro at the date of the passage of this ordinance were A. J. Herrington, W. E. Taylor, F. Hamp Blount, Frank A. Blount, Gray Quinney, and Moses C Cohen. Frank S. Palmer was mayor. A majority of these were members of the Waynesboro Ice Association.

A witness for the plaintiff testified that he heard Frank A. Blount, on April 8, 1921, say that the city council imposed this heavy license tax on ice dealers because Williams was selling ice at such a low price that the Waynesboro Ice Association could not compete, and that the tax was imposed to prohibit Williams from further dealing in ice. Another witness for the plaintiff testified that on the morning of April 9, 1921, a few days after Williams

had been compelled to stop selling ice by reason of this tax, the Waynesboro Ice Association raised the price of ice from seventy to eighty cents per hundred, while Williams was retailing ice at fifty cents per hundred on the day previous. Edgar Bargeron, on behalf of the plaintiff, testified that for the past year and several years prior thereto he had been engaged in retailing ice in Waynesboro, but owing to this tax it was impossible for him to engage in the ice business. He could not carry on such business profitably when operated on the most economical basis. His yearly sales would not exceed 500 tons.

In April, 1920, an ordinance was passed, imposing an occupation tax on such dealers of $25. During the years 1918 and 1919 the plaintiff sold, respectively, 2100 tons and 2600 tons. In 1920 his sales amounted to 1700 tons, due to the fact that the Waynesboro Ice Association had begun the sale of ice in September of that year. This association sold approximately 300 tons during the remainder of that year. Edgar Bargeron sold about 500 tons. All dealers did not sell more than 2700 tons. He sold ice at from $12 to $15 per ton, making a very small profit. The average consumption of ice in Waynesboro is 2500 tons per annum. The Waynesboro Ice Association is selling one half or more of the ice consumed in that city. The plaintiff's sales for the present revenue year will not exceed 1200 tons, and will yield the gross sum of $12,000. The margin of profit is so small that he can not afford to pay this occupation tax. The cost of 1200 tons of ice and the sale and delivery to customers will amount to $10,000, leaving a profit of $2,000, with nothing deducted for depreciation.

The clerk of the city council testified that the plaintiff paid the license tax on his ice business of $25 for the year ending October 1, 1920. No change in this tax was made for the year beginning October 1, 1920, until April 4, 1921, when the tax of $300, and $100 on each additional wagon, was imposed. On April 9, 1921, the plaintiff tendered to him as clerk $25 in payment of said license tax, which he refused. Under the ordinance of the City of Waynesboro an occupation tax is imposed on merchants of $5 on the first thousand dollars worth of business done or fraction, and one dollar on each additional thousand. Blacksmiths pay $35, merchandise brokers $25, stock brokers $10, boarding-houses $10, bottling-works $75, contractors $25 to $100,

dealers in cottonseed or seed-cotton $25, public drays $25, express companies $100, hotel-keepers $50, insurance companies $10, dealers in green meats $25, candy factories $10, carriage and wagon factories $35, opera houses or music halls $50, delivery and sales stables $25, telephone and telegraph companies $25, storage warehouses $50, lumber yards $25, dealers in brick $25, cotton-oil mills $200, packing-houses $50, milk sellers $10, and public ginneries $50.

J. E. Munday, manager, and John B. McNatt, bookkeeper, of the Southern Cotton Oil Company, testified that the annual business of such companies in Waynesboro amounts to $75,000 per annum. C. L. Rowland, manager of the Burke County Oil and Fertilizer Company, testified that his company did an annual business of $50,000 in Waynesboro. The occupation tax on ice dealers in the city of Augusta was $150 per annum and on wagons $5 for each horse. The population of Augusta was between fifty and sixty thousand, and that of Waynesboro between three and four thousand.

In its answer the defendant alleges that the plaintiff for a number of years was the sole ice dealer in Waynesboro, doing a business of $40,000, and making net profits of $10,000 per year, without payment of any license tax. He charged extortionate prices, and refused to give correct weights. The citizens of Waynesboro complained to the mayor and council for relief. On the first Monday in April, 1920, an ordinance was passed requiring all dealers to keep on hand accurate scales, and imposed a nominal license tax of $25 on its dealers.

Donald Blount, agent of the Central of Georgia Railway Company at Waynesboro, testified, for the defendant, that there was delivered to the plaintiff from January 3, 1920, to December 13, 1920, 111 cars of ice, that the freight on each car up to September 3, 1920, was about $15 per car of 30,000 pounds, and after September 3 $18.75 per car. The cars contained 30,000 pounds, except in a few instances.

Robert Bargeron, for the defendant, testified that E. Bargeron & Brother sold ice in Waynesboro from April 1 to September 1, 1920, that during said period his firm sold an average of two cars of twelve tons each per week, or 480 tons. This ice cost from $6

to $8 per ton. Seven dollars would be an average price. The freight was $1.50 per ton.

Floyd Scruggs, on behalf of the defendant, testified that he was employed by the plaintiff as delivery-man of ice during the years 1919 and 1920. He sold during the season of 1920 an average of about a ton and a half per day. He sold ice to drugstores and beef markets at sixty cents, to business houses and stores at seventy-five cents, and to residences at $1 per hundred. While these prices were supposed to be based on the weights of a hundred pounds, the ice weighed a great deal less, he being instructed to cut the ice so that it would sell at the weights at which the same was purchased. He was constantly met with complaints from the citizens of Waynesboro about the weights. He was paid $3 per day for his services during the ice season of 1920, and others were paid the same amount. The only other expenses were the cost of maintaining the delivery wagons and the cost of storage.

R. L. Oliver, city clerk, testified that in addition to the occupation tax the Southern Cotton Oil Company paid during 1920 an ad valorem tax of $379.80, the Burke County Oil Mill, in addition to the occupation tax, paid an ad valorem tax of $135, the Waynesboro Gin Company an ad valorem tax of $105, and the Kitchens & Page Ginnery an ad valorem tax of $63. A business tax of $300 upon each agent engaged in delivering fertilizer from warehouses has since been imposed. The ordinance of which plaintiff complains was unanimously passed, and in his opinion was not unreasonable or discriminatory.

J. H. Whitehead, president of the Waynesboro Ice Association, testified that he and thirty-six other citizens of the city of Waynesboro, in the spring of 1920, formed said association; that they borrowed $25,000, and erected an ice plant in Waynesboro. Said organization was not formed for private gain, but solely for the benefit of the community. It is the purpose of said organization, as soon as its plant is paid for, to donate the same to the City of Waynesboro, without any gain or dividend to its members. This association and Williams are the only ice dealers within the limits of Waynesboro. The Waynesboro Ice Association has already paid this occupation tax. In his opinion this occupation tax is reasonable.

John G. Herrington deposed for the defendant, that he is

manager of the Waynesboro Ice Association, and that said association sold during 1920 400 tons of ice. The association is now selling approximately half of the total amount of ice sold in Waynesboro.

James H. Whitehead, president of the Waynesboro Ice Association, testified for the defendant, that there had been no increase by this association in the price of ice after the passage of the ordinance of April 4, 1921.

In rebuttal, the plaintiff testified that he pays a property tax in the City of Waynesboro on his lot where his warehouse is located. and on his residence. His profits on ice sales did not go above $2 per ton. The Waynesboro Ice Association did not go into the ice business until September of 1920. That company is now in the market, and he does not see how he could expect to sell more than 1200 tons of ice during the year 1921.

When the purchaser weighed his own ice the price was about $1 per hundred. He was selling this year at fifty cents per hundred pounds on the average. The other company was selling at seventy cents. He is now paying drivers ten dollars per week. He tried to sell ice so that the weights at which he bought in Augusta would hold out. The buyer would stand the loss. The ice he sold at $20 per ton to retailers, to wholesale consumers at $12 per ton, to drug-stores at $15 per ton, cost him $6 per ton, later $7 per ton, beside freight. He can not account for his making only $2 per ton profit when there is this difference between cost and selling price.

Frank A. Blount testified for the defendant, that he denied that he made the statement about crushing out Williams's business, but admitted he did talk about it, and said if they wanted to take it that way they could do so. He admitted he said he would be willing to put the tax up to $1000 on account of the way the plaintiff had been charging people for ice when he had no opposition.

F. S. Palmer, for the defendant, testified that he is the mayor of Waynesboro; he never made the statement that this tax was put on to crush out Williams, but admitted he wrote to persons outside of Waynesboro to know if he would be permitted to levy a tax of $2,000 or $2,500. He felt that they were obliged to take some kind of a defensive step. He denies that there was any in-

crease in the price of ice made by the new company on April 9, after they stopped Williams from selling his ice.

The judge below refused to grant the temporary restraining order; and this is the error assigned.

*E. M. Price* and *W. H. Fleming,* for plaintiff.

*E. V. Heath* and *H. J. Fullbright,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. It is insisted by the plaintiff that the Mayor and City Council of Waynesboro is without power to increase a business tax, where, at the beginning of the license year, there is an ordinance in existence fixing the amount of such tax; and that such increase of a business tax by a new ordinance, passed after the beginning of the revenue or license year of the municipality, would in effect be a revocation of the license granted to carry on the particular business for which it was granted. Counsel for plaintiff relies on the case of *Peginis* v. *Atlanta,* 132 *Ga.* 302 (63 S. E. 857, 35 L. R. A. (N. S.) 716). In that case this court drew a distinction between the collection of a business tax on occupations which are per se useful and lawful, although the method of imposing such tax is called a license, and the granting of a license, strictly so called, granted under the police power for the regulation and control of certain pursuits. The court said: " In the former class the tax or charge is imposed for the purpose of collecting revenue; and although the mode of doing so is frequently called licensing, the real purpose is to enforce the collection of the municipal revenue. As to such occupations the municipal authorities are not vested with a discretion to grant or refuse licenses or to revoke such licenses at the will of the grantor.". This case is authority for the proposition that a municipal corporation can not revoke a license to conduct a lawful and useful business, where the method of licensing is for the purpose of collecting an occupation tax on such business; but it does not decide that a municipality, having full power of levying occupation taxes, can not change an ordinance in existence at the time its license year begins by passing a new ordinance increasing such occupation tax, where the increased tax is not unreasonable, arbitrary, prohibitive, or confiscatory, especially when such tax had not been paid under the prior ordinance before the passage of the new one. This court has held that " the municipal authorities could change an ordinance

imposing a special tax upon a particular class of dealers by increasing the rate, after the tax first levied had been paid, but before the expiration of the time for returning and paying the same; and such a change, made between the date of the payment and the time when its collection could have been enforced, was not unlawful." *Mayor etc. of Savannah* v. *Crawford, 75 Ga.* 35.

The principle ruled in that case may be justified upon the ground that a municipality, having full power to levy business taxes, can at any time increase the tax on a particular class of dealers, provided such increase is not arbitrary, prohibitive, confiscatory, or discriminatory, whenever the exigencies of the municipal finances require the increase.

The case of the plaintiff is not so strong as that of the *Crawford* case, just cited, because he did not pay the license tax for the license year beginning October 1, 1920, before the passage of the ordinance of April 4, 1921. Upon the authority of the *Crawford* case we do not think that the levy of a larger occupation tax by the ordinance of April 4, 1921, than that fixed by the ordinance in force at beginning of the license year, is unlawful.

2. It is now indisputably established by the decisions of this court that an occupation tax must be reasonable in amount and must not be discriminatory, confiscatory, or prohibitive. *Morlon* v. *Macon,* 111 *Ga.* 162 (36 S. E. 627, 50 L. R. A. 485); *Mayor etc. of Savannah* v. *Cooper,* 131 *Ga.* 670 (63 S. E. 138); *Southern Express Co.* v. *Ty Ty,* 141 *Ga.* 421 (81 S. E. 114); *Western Union Telegraph Co.* v. *Fitzgerald,* 149 *Ga.* 330 (100 S. E. 104).

The presumption is always in favor of the reasonableness of the tax, and the burden is upon the plaintiff to establish the fact that it is unreasonable or prohibitive. It is shown under the facts of this case that the occupation tax, imposed upon the plaintiff by this ordinance, is unreasonable, prohibitive, or confiscatory? The undisputed evidence shows that the tax has driven out of the ice business one of the three ice dealers in the City of Waynesboro, and prohibits the plaintiff, one of these three ice dealers, from continuing this business in the city. This leaves the Waynesboro Ice Association as the sole ice dealer in Waynesboro, and gives to this association a monopoly of the ice business in that city. The effect of this tax has been prohibitive as to all dealers in ice, except this association.

The plaintiff asserts that his net earnings amounted to only $2,000 per annum; and this ordinance imposes a tax of thirty per cent. on that amount. The city contends that the plaintiff had been making a net income of $10,000 per annum. Even according to the contention of the city he was making this amount of net income before the Waynesboro Ice Association began to make and sell ice in Waynesboro. Since the plaintiff has been compelled to meet this new competition he has been able to do only about half as much business as he had been doing prior to the levying of this tax. It is shown that there are consumed in Waynesboro annually 2500 to 2700 tons of ice. The inference may be fairly drawn from the evidence that the plaintiff will hereafter sell not more than one half of this amount of ice consumed in that city. In that event he will pay twelve per cent. upon his net income as an occupation tax. But assuming that the plaintiff could earn $10,000 per annum, this occupation tax amounts to six per cent of that amount. This court has held that an occupation tax of $500 upon " money-lenders, copartners, associations, corporations, or individuals, lending money on household or kitchen furniture and wearing apparel, is unreasonable (*Morlon* v. *Macon,* 111 *Ga.* 162, supra) ; and that a tax of $400 upon an agent selling fresh meats, his salary being but $1800, was excessive and unreasonable (*Mayor etc. of Savannah* v. *Cooper,* 131 *Ga.* 670, supra).

In this case the tax has been proved prohibitive in its results, by driving out all dealers but one, and in creating a monopoly in the ice business in the City of Waynesboro. This alone would not make such tax unlawful, but can be considered in determining, under the whole situation, whether such tax is unreasonable.

So we reach the conclusion that this occupation tax is unreasonable, and that the court below should have granted an injunction restraining its enforcement.

*Judgment reversed. All the Justices concur.*