## STEUER *v.* CITY OF ATLANTA.

No. 9061. FEBRUARY 18, 1933. REHEARING DENIED FEBRUARY 28, 1933.

*Dillon, Calhoun & Dillon* and *Ralph R. Quillian,* for plaintiff.

*J. L. Mayson, C. S. Winn,* and *J. C. Savage,* for defendant.

BELL, J. J. J. Steuer brought suit against the City of Atlanta and two of its officers, to enjoin the enforcement of the following provision of a tax ordinance of the city: "On persons, firms, or companies furnishing lending libraries by maintaining depositories in drug-stores or other points within the city where 125 books or less are left, in each place for use by the public, a license of $10 per year is hereby fixed." The defendants filed an answer; and after hearing evidence the trial judge refused an interlocutory injunction, and the plaintiff excepted. The petition alleged : The plaintiff is engaged in the business of furnishing the latest books to the reading public at a nominal rental charge, the business conducted by him being in the nature of a circulating library. "The method by which said business is conducted is that of placing a book stall which is made in the form of a small bookcase containing four shelves, the capacity of each book stall being approximately 100 books, said book stalls being placed in drug-stores in the various community centers throughout the City of Atlanta. . . The various book stalls, which shall hereinafter be termed units, are not operated as individual enterprises, but are merely constituent parts of petitioner's business. The proprietor of the store in which a given unit is placed keeps a record of the books in that particular unit, which are loaned out to the public, and makes collection of the rental fees as they accrue. Petitioner employs a local manager, whose duty it is to renew the books in the various units which have become depleted by the failure of readers to return books, and whose further duty it is to exchange the books as they have been read in one community, to a unit in another section of the city, as well as to collect 70 per cent. of the proceeds which have been derived from the rental fees of the various units from the respective proprietors of the stores in which said units are placed. With an initial investment of approximately $8000, petitioner has at the present time approximately 80 units placed in various community centers throughout the City of Atlanta, and in so doing has performed a public service in giving to the people of Atlanta an opportunity to read the latest books which are not presently available in the public libraries of the city. The monthly cost (of book replacement) to maintain this volume of business is $500. The operating expenses

of petitioner's business, aside from the cost of book replacement, averages the sum of $400 per month. The average monthly gross receipts is the sum of $1000. These figures are computed on the present basis of the volume of petitioner's business, to wit, eighty units; but the proportionate ratio of expense would be the same, irrespective of the volume of business done."

It is thus alleged, in effect, that from an investment of $8000 the plaintiff is receiving a net monthly income of only $100, or $1200 per year, upon which the city has assesed a tax amounting to $800 per year. It is contended that the tax is illegal, for the reasons (1) that the city is attempting to divide the business conducted by the plaintiff into its constituent elements, parts, or incidents, and to levy a separate tax upon each; and (2) that the annual tax amounting to about two thirds of the annual net revenue of the plaintiff's business is excessive, unfair, arbitrary, unreasonable, oppressive and confiscatory. The allegations of the petition as to the amount of the investment, expense, and net income were proved without dispute by the evidence. It further appeared that the plaintiff kept a record of the net monthly receipts from each depository, and "that some of the depositories produced a net amount, after paying 30 per cent. to the owner of the store, as much as $28 and others as low as $1.80, the average being about $12 per month." The bill of exceptions recites that in this connection "it was shown by oral testimony that it was necessary to keep and maintain the depositories which produced small amounts in order to absorb books that had already been used in the more popular depositories. In other words, that the smaller producing depositories, inasmuch as they used the old books that were not required elsewhere, were not conducted at any expense as far as books are concerned, the books used in the smaller places having been already used in the larger ones."

■ The ordinance does not constitute an attempt to divide a business into its constituent elements, parts, or incidents and to levy a separate tax upon the different elements, parts, or incidents thereof; and the following and like cases which deny the validity of such a tax are not in point: *Hewin* v. *Atlanta,* 121 *Ga.* 723, 733 (49 S. E. 765, 67 L. R. A. 795, 2 Ann. Cas. 296); *City of Colquitt* v. *Jeffords Oil Co.,* 170 *Ga.* 605 (154 S. E. 140); *Wofford Oil Co.* v. *Boston,* 170 *Ga.* 624 (154 S. E. 145). The ordinance merely im-

posed a tax upon the business of operating lending or circulating libraries, and sought to graduate the tax according to the number of places where depositories were maintained. The ordinance contained a classification of the business referred to, and provided an ascending scale of taxation according to the number of units or different places of business. This was a reasonable basis of classification, and one authorized by the charter of the City of Atlanta. *Sawtell* v. *Atlanta,* 138 *Ga.* 687 (75 S. E. 982) ; *Lewis* v. *Savannah,* 151 *Ga.* 489 (3) (107 S. E. 588) ; *Wright* v. *Hirsch,* 155 *Ga.* 229 (2) (116 S. E. 795) ; *Price* v. *Richardson,* 159 *Ga.* 299 (125 S. E. 449) ; *Atlanta Laundries Inc.* v. *Harrison,* 174 *Ga.* 448 (4) (162 S. E. 912) ; *Goodwin* v. *Savannah,* 53 *Ga.* 410 ; *Johnston* v. *Macon,* 62 *Ga.* 645 (3).

■ It may be inferred from the record that the plaintiff is the only person conducting such a business in the City of Atlanta; but this fact, together with the additional circumstance that upon the business so conducted by him the tax in the aggregate has proved an intolerable burden, is not the true criterion for determining whether such tax is a reasonable one. The reasonableness of a tax is not dependent upon the amount of business conducted or the profit received by a particular individual, but is determined by ascertaining whether the conditions in the municipality as a whole will justify the tax. If so, the tax is not invalid as being unreasonable merely because the business as conducted by a particular individual may not be able to pay it. *Mayor &c. of Savannah* v. *Cooper,* 131 *Ga.* 670, 676 (63 S. E. 138) ; *Postal Telegraph-Cable Co.* v. *Cordele,* 141 *Ga.* 658 (1 *a*), 665 (82 S. E. 26) ; *Atlantic Postal Telegraph-Cable Co.* v. *Savannah,* 136 *Ga.* 657 (71 S. E. 1115) *Ray* v. *Tallapoosa,* 142 *Ga.* 799 (2 *b*) (83 S. E. 938) ; *Wright* v. *Hirsch,* supra. A tax which is entirely reasonable may prove to be irksome either because a particular business is not properly conducted or because it is carried on in a locality where it can not be made to succeed. It appears from the evidence in this case that some of the units of the business conducted by the plaintiff produced a gross monthly income of as much as $28 each, while others produced as little as $1.80 per month, the average being about $12 per month. It does not appear how many of the different depositories or units produced the larger amount. If the plaintiff received the sum of $28 per month, or $336 per year, from each of

as many as ten of the different places where books were kept for use by the public, the tax of $10 a year for each place could not be said as a matter of law to be excessive and unreasonable as to these particular units. Any other number than ten might be taken for illustration. The principal investment and the deductible expense of operation might not be the same in proportion, but it is reasonable to assume that the disparity would not be so great as to demand the inference that a business confined to those depositories which yielded the larger income could not absorb the tax and still be operated at a fair profit.

The testimony to the effect "that it was necessary to keep and maintain the depositories which produced small amounts in order to absorb books that had already been used in the more popular depositories" was not such a statement of fact that the trial judge was bound to accept it to the exclusion of his own reasoning and judgment. All of the evidence upon this question was in its nature opinionative, and did not as a matter of law overthrow the presumption that the tax was a reasonable one. The trial judge could have inferred that the plaintiff had too greatly multiplied the number of units and had located some of them in places where the business could not be well supported. If such a tax will operate reasonably with respect to a given number of units, and is equitably adjusted to the economic and other conditions applicable to such business within the city as a whole, it should not be declared invalid merely because a particular individual has unwisely established within the city a larger number of units than the public demand will justify, or has placed some of them in naturally unprofitable locations. We do not say that this was true of the plaintiff in this case, but we hold that the presiding judge as a trior of the facts could have found it to be true under the evidence. It can not be said as a matter of law that the trial judge abused his discretion in refusing an injunction.

*Judgment affirmed. All the Justices concur, except Beck, P. J., absent for providential cause.*

GILBERT, J. I concur in the judgment of affirmance, on the ground that it does not appear that anything has been done or is about to be done by the defendants to interfere with the person or property of the plaintiff.