CHANDLER *v.* CITY OF TIFTON *et al.*

No. 16779. OCTOBER 11, 1949.

44

*S. B. Lippitt,* for plaintiff.

*C. A. Christian,* for defendants.

ALMAND, Justice. ■ Under the act of 1935 (Ga. L. 1935, p. 492), as amended by the act of 1941 (Ga. L. 1941, p. 234), the sale of wine at retail in any county in this State is legal, if such sale has not been prohibited by an election held pur-

suant to section 4 of the act of 1935, supra, as amended by the acts of 1937 and 1947 (Ga. L. 1937, p. 851; Ga. L. 1947, p. 1178). Such business is a lawful one, and though a municipality has the power to require the payment of a license fee and may refuse to grant a license for the sale of wine upon proper cause or revoke a license upon proper cause after notice and hearing (sec. 4, act of 1935, as amended by act of 1941, supra), it cannot arbitrarily and without cause prohibit one from engaging in the business of selling wine at retail. *McKown* v. *Atlanta,* 184 *Ga.* 221 (190 S. E. 571); *Walker* v. *Carrollton,* 187 *Ga.* 237 (200 S. E. 268).

■ A municipal corporation under charter power can levy and collect a license tax upon persons carrying on a trade or business, but it does not have power to impose on a lawful business a prohibitory tax. *Morton* v. *Macon,* 111 *Ga.* 162 (36 S. E. 627). In that case, this court said: "The question before us is, therefore, resolved into simply this: Does a power given by law to a municipal corporation to tax a useful and legitimate business include the right of imposing upon it a tax so high as to render it impossible to pay the same and carry on the business profitably?

"As the purpose of such taxation is to raise money for the support of the municipal government, and as the power of taxing is given exclusively for the accomplishment of this needful purpose, ordinances adopted in pursuance of this power must tend to effectuate, and not to defeat, the end in view. Cooley's Const. Lim. (6th ed.) 240, 241. We find the following in Cooley on Taxation (2d ed.) 597-8: 'If a revenue authority is what seems to be conferred, the extent of the tax, when not limited by the grant itself, must be understood to be left to the judgment and discretion of the municipal government, to be determined in the usual mode in which its legislative authority is exercised; but the grant of authority to impose fees for the purposes of revenue would not warrant their being made so heavy as to be prohibitory, thereby defeating the purpose.' " Pp. 164, 165.

The plaintiff asserts that the annual license tax of $5000 which was imposed upon retail dealers in wine in Tifton is "arbitrary, unreasonable, and confiscatory." The reasonableness of a

municipal ordinance is reviewable by the courts, and if found to be unreasonable, the ordinance will be declared void. *Atlantic Postal Telegraph-Cable Co.* v. *Savannah,* 133 *Ga.* 66 (2) (65 S. E. 184); *Richardson* v. *Coker,* 188 *Ga.* 170 (2) (3 S. E. 2d, 636); *Great Atlantic & Pacific Tea Co.* v. *Columbus,* 189 *Ga.* 458 (2) (6 S. E. 2d, 320). "The reasonableness of a tax is not dependent upon the amount of business conducted or the profit received by a particular individual, but is determined by ascertaining whether the conditions in the municipality as a whole will justify the tax. If so, the tax is not invalid as being unreasonable merely because the business as conducted by a particular individual may not be able to pay it." *Steuer* v. *Atlanta,* 176 *Ga.* 433, 436 (168 S. E. 7). We therefore pass to the question as to whether, in view of all the facts disclosed by this record, the annual license tax of $5000 sought to be imposed upon the plaintiff as a condition precedent to his engaging in the business of selling wine at retail was or was not unreasonable.

■ The plaintiff testified that the volume of business done by him in 1948 was approximately $15,000 to $18,000; that the annual tax imposed upon retail dealers in wine in Albany, Georgia, a city of 40,000 population, was $100, and the tax imposed upon such dealers in Columbus, a city having a population in excess of 100,000, was $75; that no other business in the City of Tifton was required to pay an annual license fee in excess of $500, and only on two other classes of business were license taxes fixed at $500.

H. M. Paulk, a member of the Board of City Commissioners of Tifton, testified that "the City of Tifton proper has a population of approximately five thousand people, and that Metropolitan Tifton or the metropolitan area has a population of from twelve to fifteen thousand."

Bearing in mind that the ordinance providing for the license fee assessed in this case was enacted for the purpose of raising revenue and not as a regulatory measure under the police powers of the municipality, we are of the opinion that, under the facts and circumstances of this case, the assessment of an annual license tax of $5000 was unreasonable. See, in this connection, *Morton* v. *Macon,* 111 *Ga.* 162, and *Atlantic Postal*

*Telegraph-Cable Co.* v. *Savannah,* 133 *Ga.* 66 (supra); *Williams* v. *Waynesboro,* 152 *Ga.* 696 (111 S. E. 47); *Huguley-McCulloh Auto Co.* v. *LaGrange,* 159 *Ga.* 352 (125 S. E. 799); *National Linen Service Corp.* v. *Milledgeville,* 51 *Ga. App.* 167 (179 S. E. 837).

The Chief of Police of Tifton testified that, after passage of the ordinance fixing a license fee of $5000, he advised the plaintiff's employee to move the wine out, and that he expected to make cases against the employee if he sold wine without a license. He further testified that the plaintiff's place had been operated as a nuisance, and was very objectionable; that people frequently got drunk in the wine store, and there was frequent cursing, obscene and vulgar language carried on in the plaintiff's place of business; that the majority of arrests in 1948 and up to April, 1949, were of people who had drunk wine to excess, and since passage of the ordinance of April 7, 1949, arrests arising from drunkenness and disorderly conduct had fallen off at least 70%.

R. M. Kinnon, a member of the Board of City Commissioners, testified that one of the reasons why the high license tax was fixed was because reports had come to the commission that the places where wine was sold were nuisances, and that about ten licenses were sold by the City of Tifton in 1948, whereas no licenses were sold at the new license fee. He further testified that the commissioners thought that, in fixing a license fee at $5000, "no one else would pay the license except Mr. Chandler and, in this way, there would be only one wine store in the City of Tifton, and it would be much easier to police same than it would from ten to fifteen places scattered over the city." Another commissioner, H. M. Paulk, testified the same in substance as the witness Kinnon.

It is contended by counsel for the city that—in view of the fact that no one has a right to carry on the business of selling wine at retail in a municipality without first securing a license and paying such fee as may be fixed by the municipality (section 4 of the act of 1941, supra, Ga. L. 1941, p. 234), and the fact that under said section the governing authorities of a municipality may upon proper cause and hearing revoke any license for the retail sale of wine, or may refuse to grant such license

upon proper cause—the amount of the tax fixed in the present ordinance was justified for reasons shown in the record; that the plaintiff's business had been operated as a nuisance, and it would be cheaper to police one store which paid the higher license, than to police many stores that paid lower fees. These contentions would have merit if we were dealing with a case where an applicant had been refused a wine license, or a case where one who had a license to sell wine had had his license revoked after notice and hearing upon proper cause. Such is not the case before us. In this case the municipality, in enacting the ordinance, acted, not under its police powers, but under its power to raise revenue, whereby an annual license tax was assessed for the retail sale of wine. As is evident from all the facts and circumstances of the case, this annual tax is unreasonable, and where one complains that the ordinance requiring payment of this license tax is void, it is no defense to the charge of unreasonableness to claim that the business is of such nature and character that the city has the right to fix an excessively high license fee, on the basis that the business is one that requires extra regulation or police protection. See, in this connection, *Morton* v. *Macon,* 111 *Ga.* 162 (supra).

Having held the annual license fee of $5000 as a tax on the sale of wine to be void because of unreasonableness, it becomes unnecessary for us to deal with the attack made on the constitutionality of the ordinance. *Great Atlantic & Pacific Tea Co.* v. *Columbus,* 189 *Ga.* 458, 473 (supra).

■ As a general rule, equity will not enjoin a criminal prosecution, but it will enjoin a prosecuton that "illegally threatens irreparable injury or destruction of property, where the plaintiff has no adequate remedy at law. In such a case the injunction issues, not to prevent the criminal prosecution, but to prevent unlawful injury to property." *Great Atlantic & Pacific Tea Co.* v. *Columbus,* 189 *Ga.* 458 (1), (supra). The evidence shows: that the plaintiff in 1948, under a license tax fixed by the City of Tifton, paid the sum of $250 to sell wine at retail; that, during the first part of 1949, after passage of an ordinance prohibiting the sale of wine at retail, the chief of police made 14 separate criminal cases against an employee of the plaintiff who was operating his wine store, and the plaintiff was forced

to institute proceedings by injunction to stop further prosecution; that, since the passage of the last ordinance, the chief of police has notified the plaintiff and his employee of the officer's intention to make separate cases against them for each sale of wine, and for the plaintiff's possession thereof; that the chief of police has informed the plaintiff's employee that, if the employee did not close his store, it was the purpose of the chief to "close up this place of business and move the wine out of the City of Tifton," and he was further told by the clerk of the city "that he must move this wine out of the City of Tifton and close up"; and that the clerk said he "was notifying him officially to do so." Said employee further testified that no case had ever been made against him for the way in which the store was run in the past ten years.

The chief of police testified that he advised the plaintiff's employee to move out of the City of Tifton, and shortly before the filing of this suit advised him to move out the wine, and that he expected to make cases against him if he sold wine without a license. It further appeared that the plaintiff had invested in wine at the time this suit was filed the sum of about $2000. It was alleged that the defendant chief of police had threatened to seize said wine and close up the plaintiff's place of business unless he voluntarily closed said place of business.

We think that the facts in this case bring it squarely within the ruling in *Walker* v. *Carrollton*, 187 *Ga.* 237 (supra), in which case it was alleged that the plaintiffs conducted the business of retail sale of wine, and that the City of Carrollton had attempted to prohibit such sale, and had repeatedly raided and searched the plaintiffs' places of business, and made repeated arrests, and made threats to continue making arrests for each and every day that wine should be found in their places of business. This court held that, because of such repeated raidings and searching of the places of business, "there was such interference with petitioners' business and property rights as to bring the case within the exception to the general rule." P. 239.

The facts in this case, showing that the plaintiff's employee had been arrested many times, and that the officers of the municipality charged with enforcement of the law had threatened

to seize the plaintiff's property and close his place of business, were sufficient to authorize a court of equity to intervene. The trial court erred in refusing an interlocutory injunction.

*Judgment reversed.   All the Justices concur.*